UNITED STATES ex rel. INTERSTATE COMMERCE COMMISSION v. SEABOARD RY. CO.

(Circuit Court, S. D. Alabama.   July 2, 1897.)

No. 203.

CARRIERS — INTERSTATE COMMERCE — COMMON ARRANGEMENT FOR CONTINUOUS CARRIAGE.

The shipment of freight over a number of lines of railroad from a point in one state to a point in another, at a through rate of charges, under an agreement, express or implied, for a conventional division of the charges among the different roads, constitutes a "common arrangement for a continuous carriage or shipment," within the meaning of the interstate commerce act, and a road participating in such arrangement is subject to the provisions of the act, though its line lies entirely within one state, and its part of the joint charge is its regular local rate.

Jos. N. Miller, Dist. Atty., for the United States.
E. L. Russell, for defendant.

TOULMIN, District Judge. The question to be considered in this case is whether the defendant, in transporting property from Fairford, in the state of Alabama, to Chicago, in the state of Illinois, and in transporting goods from Cincinnati, in the state of Ohio, to Fairford, is engaged in such transportation, under a "common arrangement for a continuous carriage or shipment," within the meaning of that language, as used in the act to regulate commerce. The defendant claims that it is not engaged in interstate traffic; that the freight charge from Fairford to Chicago and from Cincinnati to Fairford is made up of a joint rate between Calvert, in the state of Alabama, and Chicago, and between Cincinnati and Calvert, and the regular local rate between Calvert and Fairford; and, as the amount

of the said regular local rate goes to it (the defendant), such a method of carrying freight between the points named and of apportioning the money earned is not a transportation of property between those points "under a common arrangement for a continuous carriage or shipment." In other words, it is contended that, as the Seaboard Railway Company is a corporation of the state of Alabama, and as its road lies wholly within that state, and as it exacts and receives its regular local rate for the transportation from Fairford to Calvert and from Calvert to Fairford, it is not, as to freight so carried, within the scope of the act of congress to regulate commerce.

The supreme court, in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 193, 16 Sup. Ct. 704, held that:

"When goods shipped under a through bill of lading from a point in one state to a point in another are received in transit by a state common carrier under a conventional division of the charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce."

—And said:

"When we speak of a through bill of lading, we are referring to the usual method in use by connecting companies, and must not be understood to imply that a common control, management, or arrangement might not be otherwise manifested."

In the case cited there was a through bill of lading. In the case now under consideration there is no evidence of a through bill of lading. But for that fact, the two cases would be almost identical. The supreme court, however, say that they must not be understood to imply that a "common arrangement" might not be otherwise manifested than by a through bill of lading. Of course, it may be shown by an express agreement to that effect. In this case there is no evidence of any express agreement. But I think such an arrangement may be manifested by circumstances, such, for instance, as when a carrier, in the usual course of business, enters into the carriage of foreign freight by agreeing to receive and ship goods from a point in one state to a point in another, and to participate in through rates and charges, under a conventional division of the same; that is, a division of the same, expressly or impliedly agreed to. The supreme court, in the case cited supra, in effect held that, when a railroad enters into the carriage of foreign freight by agreeing to receive and ship goods from a point in one state to a point in another, and to participate in through rates and charges, it thereby becomes part of a continuous line, made by an arrangement for the continuous carriage or shipment from the one point to the other, and becomes amenable to the act in relation to interstate commerce. This declaration of the supreme court, it seems to me, clearly shows that the "common arrangement" referred to is implied from the circumstances stated. In that case the court held that a through bill of lading and a conventional division of the charges manifested a common arrangement, and that, although one of the lines of railroad used was a state common carrier, with its line wholly within the

state, and its part of the charges was the regular local rate between two points within the state, it was subject to the interstate commerce act. The facts of that case were that goods were shipped from Cincinnati, Ohio, to Social Circle, Ga., a station on the Georgia Railroad. The initial carrier at Cincinnati issued through bills of lading, and quoted through rates. Said rates were arrived at by adding to the rates from Cincinnati to Atlanta the full local rates of the Georgia Railroad from Atlanta to Social Circle. The Georgia road received the goods at Atlanta, and transported them continuously to Social Circle, but it demanded and collected its full rates from Atlanta to Social Circle. The United States circuit court of appeals and the supreme court held that the Georgia road was amenable to the interstate commerce act.

The facts of the case under consideration are that the defendant received at Fairford, a station on its line, lumber by car loads destined for Chicago, which was shipped over its road to Calvert, a station on the Mobile & Birmingham Railroad, and a point where the two roads cross; that the railroad agent at Calvert was the common agent of the two roads at that point; that he issued freight waybills over the Mobile & Birmingham road from Calvert to Chicago, via Mobile, whence the shipment in the same cars continued over the Louisville & Nashville Railroad and other lines in succession to Chicago. The waybills contained the name of the shipper and of Fairford, the place of shipment, and also the name of the consignee, and of Chicago, the place of destination. There was a joint freight tariff on lumber in car loads from Fairford, Ala., to Chicago, Ill., expressly agreed to or concurred in, in writing, by all railroad lines over which the shipments were made, except by the defendant. There was no evidence that the defendant expressly agreed to the tariff, but that it received and receipted for its part of the through freight as the same was provided for in the tariff, its portion being $1\frac{2}{3}$, which was equivalent to its regular local rate between Fairford and Calvert. The freight was paid to the terminal road at Chicago, and by it transmitted through the several intervening roads to the defendant, the initial road; each road, as is usual in such cases, retaining its part, and paying the balance over to the preceding road in the line of transportation; the defendant receiving its part of said freight from the Mobile & Birmingham Railroad. The facts also are that, in the usual course of business, goods are shipped from Cincinnati to Fairford over the Louisville & Nashville Railroad, consigned to Fairford, with waybill to Mobile, and by continuous shipment from there to Calvert over the Mobile & Birmingham Railroad, and thence by continuous shipment to Fairford, where the freight is collected by the defendant, its part retained, and the balance transmitted to the other railroads in the line in the usual course. My opinion is that the facts of this case manifest a common arrangement for a continuous carriage or shipment of property from one state to another state of the United States, in contemplation of the act to regulate commerce, as the same is construed by the supreme court of the United States. Interstate Commerce Commission v. Detroit, G. H. & M. Ry. Co. (U. S. Sup. Ct. decision, May 24,

1897) 17 Sup. Ct. 986. I am therefore constrained to grant the prayer of the petitioner, and to order the writ of mandamus to issue as prayed for; and it is so ordered.