### GREENWALD et al. v. WEIR.

(Supreme Court, Appellate Term.   June 5, 1908.)

1. CONTRACTS—LEGALITY—ENFORCEMENT OF ILLEGAL CONTRACT.

A contract is protected and enforced by law, not because it is a moral obligation, but because it is a civil obligation, and, to entitle it to be enforced, the contract must be legal, as an illegal contract creates no obligation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 455–461.]

2. CONSTITUTIONAL LAW—LIBERTY TO CONTRACT—ILLEGAL CONTRACTS.

The liberty to contract is not absolute, and there is no freedom of contract to make an illegal contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 157.]

3. CARRIERS—REGULATION—RIGHT TO REGULATE.

Common carriers are engaged in a public employment, and, by assuming to discharge public duties, submit themselves to governmental control and regulation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1–24.]

4. SAME—INTERSTATE CARRIERS—RIGHT OF CONGRESS TO REGULATE—LIABILITY FOR LOSS OR INJURY—CONSTITUTIONALITY.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1907, p. 906), provides that any common carrier. etc., on receiving property for interstate transportation, shall issue a receipt or bill of lading therefor, and be liable to the holder for any loss. damage, or injury to the property caused by the common carrier, etc., and no contract, receipt, etc., shall exempt the carrier from the liability hereby imposed. *Held*, that Congress has constitutional power to regulate the right of public or common carriers of interstate commerce to contract. and section 20 is constitutional.

5. SAME—LIABILITY FOR NEGLIGENCE—CONTRACTS RELEASING LIABILITY—VALIDITY.

The general rule is that a common carrier cannot relieve itself by contract from liability for its own negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 654–659.]

6. SAME—VALIDITY OF EXPRESS RECEIPT—EXEMPTIONS FROM LIABILITY.
    Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S.
Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, § 7,
34 Stat. 593 (U. S. Comp. St. Supp. 1907, p. 906), provides that any com-
mon carrier receiving property for interstate transportation shall issue
a receipt or bill of lading therefor, and be liable to the holder for any
loss, damage, or injury to the property, and no contract, receipt, etc., shall
exempt the carrier from the liability thereby imposed. An express com-
pany received property from plaintiff for shipment, and issued a receipt
therefor, which provided that in consideration of the rate charged for
carrying the property, which was regulated by the value thereof and bas-
ed on a valuation of not exceeding $50 unless a greater value was de-
clared, the shipper agreed that the value of the property was not more
than that sum, unless a greater value was stated, and that the company
should not be liable for more than the value so stated, or for more than
$50, if no value was stated. Nothing was said as to the value of the
package when it was delivered, and the package was lost in transit. *Held*,
that the clause attempting to limit the carrier's liability to $50, or to
exempt it from all liability in excess of that sum, was void under the in-
terstate commerce act, and, there being no fraud by the shipper alleged,
paragraph 3, § 10, of that Act (Act Feb. 4, 1887, c. 104, 24 Stat. 382 as
amended by Act March 2, 1889, c. 382, § 2, 25 Stat. 857 (U. S. Comp. St.
1901, p. 3160), had no application.
    Dayton, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Seventh
District.

Action by Isaac Greenwald and others against Levi C. Weir, as
president of the Adams Express Company, to recover the value of
an express package lost in transit. From a judgment for plaintiffs
for an amount less than that claimed, plaintiffs appeal. Judgment
reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and
DAYTON, JJ.

Samuel J. Rawak, for appellants.

Cravath, Henderson & De Gersdorff, for respondent.

SEABURY, J. The facts of this case are undisputed. The plain-
tiffs delivered to Adams Express Company a package containing
dry goods of the value of $235, to be forwarded to Waukegan, Ill.
An employé of the defendant received the package and signed a re-
ceipt for it. Nothing was said at this time in reference to the con-
tents or value of the package. The package was not delivered, and
its loss is not explained. The express receipt had printed in small
type upon it the following clause:

"In consideration of the rate charged for carrying said property, which is
regulated by the value thereof and is based upon a valuation of not exceed-
ing fifty dollars unless a greater value is declared, the shipper agrees that
the value of said property is not more than fifty dollars, unless a greater
value is stated herein, and that the company shall not be liable in any event
for more than the value so stated, nor for more than fifty dollars if no value
is stated herein."

The defendant offered evidence to show that, had a higher value
than $50 been declared, an additional charge of 10 cents for each $100
declared in excess of $50 would have been added to the freight char-
ges.

Section 20 of the interstate commerce act of February 4, 1887 (24 Stat. 386, c. 104 [U. S. Comp. St. 1901, p. 3169], as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. Supp. 1907, p. 906]), provides as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed. Provided that nothing in this section shall deprive the holder of such receipt or bill of lading of any remedy or right of action, which he has under existing law."

The question presented for decision is whether the contract under which the package was delivered is in contravention of the terms of section 20 of the interstate commerce act. Assuming the statute to be constitutional, if the contract is in violation of its terms, it is void, and the plaintiffs may recover the true loss sustained. Whether the contract is contrary to the terms of the statute depends upon whether the purpose and effect of the contract is to "exempt" the carrier from the liability imposed by the statute. If such is the purpose and effect of the contract, it comes within the condemnation of the statute. It is noticeable that, at the beginning of the section under consideration, it is distinctly and explicitly provided that the carrier "shall be liable * * * for any loss, damage or injury," etc. Thus, without regard to the last clause, it is clear that the statute establishes the carrier's liability as to all cases within the purview of the section. The liability imposed by statute is "for any loss, damage or injury to such property." Having established such liability, it goes on to declare that "no contract, receipt, rule or regulation shall exempt * * * such carrier from the liability hereby imposed." A contract is protected and enforced by law, not because it is a moral obligation, but because it is a civil obligation. To entitle it to enforcement, it must be legal, and, if it is illegal, it creates no obligation. Story on Const. § 1380. The liberty to contract is not absolute. It has never been suggested by judicial authority that one possessed a freedom to make an illegal contract. If, therefore, the contract under consideration is within the prohibition of the statute, no question as to freedom of contract is involved. Nor can the constitutionality of this provision of the statute be successfully assailed. Common carriers cannot claim that, in the discharge of their public duties, their ability to contract is free from governmental regulation and control. A common carrier is engaged in a public employment, and throughout the history of English law has been regarded as one holding a public office. Story on Bailments, § 495. Common carriers being engaged in the performance of public duties, their activities are within the sphere of governmental regulation and control. By assuming to discharge public duties, they submit themselves to public control. As was said, by Chief Justice Waite:

"[Where] one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control." Munn v. Ill., 94 U. S. 125, 126, 24 L. Ed. 77.

The stringent rule of liability, to which common carriers have al-ways been subjected, arises out of the public nature of their employment and considerations of public policy with which that employment is affected. If it was necessary in early times to insist upon the public character of a common carrier in order to protect public interests, how much more necessary to-day that the rule should not be relaxed, when the commercial interests affected by the work of the common carrier are so much greater. Whether legislation embodied in section 20 of the interstate commerce act is wise or unwise is the concern of the legislative, and not of the judicial, branch of the government. Congress has the constitutional power to regulate the ability to contract of a public or common carrier of interstate commerce, and the act in question is not unconstitutional. Addyston Pipe & Steel Company v. United States, 175 U. S. 211, 228, 20 Sup. Ct. 96, 44 L. Ed. 136; United States v. Joint Traffic Association, 171 U. S. 505, 572, 19 Sup. Ct. 25, 43 L. Ed. 259. Almost universally, throughout the United States, it has been held that a common carrier cannot relieve itself by contract from liability for its negligence. 6 Cyc. 388. A contrary rule has existed in New York state. Kenney v. N. Y. C. & H. R. R. Co., 125 N. Y. 422, 26 N. E. 626. There is no room for doubt that in this state heretofore the shipper's recovery in the absence of fraud or imposition would be limited to the amount specified in the contract or receipt. Among the many authorities that might be cited in support of this statement, Tewes v. North German Lloyd, 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199, Addoms v. Weir, 56 Misc. Rep. 487, 108 N. Y. Supp. 146, and Hoye v. Pa. R. R. Co., 191 N. Y. 104, 83 N. E. 586, are the most recent and interesting.

The argument, which is attempted to be made, based upon the distinction in meaning between the words "exempt" and "limit," does not seem to me to be convincing. To limit one's liability to an amount less than one would be liable for, except for the contract of limitation, is to exempt such a one from any liability in excess of the amount of the limitation. The act itself provides that the carrier "shall be liable" for any loss, and declares that no contract "shall exempt" such carrier "from the liability hereby imposed." It is evident that, construing all parts of the section together and according to the language used its ordinary import, this contract attempts to do precisely what the statute declares shall not be done, and it is therefore void. Section 2074 of the Code of Iowa is similar to section 20 of the interstate commerce act, and contracts like the one now under consideration have, under that statute, been held to be invalid. Hart v. Chicago & N. W. Ry. Co., 69 Iowa, 485, 29 N. W. 597. In Barnes v. Long Island Railroad Co., 115 App. Div. 44, 100 N. Y. Supp. 593, affirmed by Court of Appeals, 84 N. E. 1108. The court considered a contract made under the provisions of the Constitution

of Kentucky (section 196), which provided that "no common car-
rier shall be permitted to contract for relief from its common-law
liability." The contract there under consideration was one in which
the shipper received the benefits of reduced rates by undervaluing
the goods shipped. The court held that the carrier was liable only
for the amount of the shipper's valuation, and that a contract lim-
iting the carrier's liability to this amount does not relieve a carrier
from common-law liability, because at common law a shipper who
falsely undervalues his goods cannot hold a carrier for the real val-
ue. The case at bar presents an entirely different question for de-
termination. Here the statute imposes an absolute liability on the
carrier to the amount of the real value of the goods, and prohibits
any contract which exempts the carrier from the liability which the
statute imposes. Carriers engaged in interstate commerce are, under
section 20 of the interstate commerce act, subjected to a statutory
liability. By this act Congress has prohibited common carriers en-
gaged in interstate commerce from making contracts of a certain
character. If the act is a constitutional exercise of legislative power
and the contract in question is within its prohibition, the contract
is, so far as it is within the prohibition of the act, absolutely void.
The evidence in this case shows that, when the shipper delivered
the goods to the carrier, nothing was said as to their value, and there
is no proof before the court which would justify the inference that
the shipper perpetrated a fraud upon the carrier. The third para-
graph of section 10 of the act to regulate commerce (Act Feb. 4, 1887,
c. 104, 24 Stat. 382, as amended by Act March 2, 1889, c. 382, § 2,
25 Stat. 857 [U. S. Comp. St. 1901, p. 3160]) has, therefore, no ap-
plication to the facts of this case, and the effect of this provision of
the act need not now be considered.

The language of the statute seems to me to be plain, and the con-
tract made, between the parties to this action, clearly in contraven-
tion of its terms. It follows, therefore, that the clause attempting
to limit the liability of the carrier to $50, or to exempt it from all
liability in excess of that sum, regardless of the value of the goods,
was void and inoperative.

The judgment appealed from should be reversed and a new trial
ordered, with costs to appellants to abide the event.

GILDERSLEEVE, P. J., concurs.

DAYTON, J. (dissenting). It seems to me that the interstate com-
merce act, as was said in Hart v. Chicago & N. W. Ry. Co.,
69 Iowa, 490, 29 N. W. 599, leaves the parties here "free to make
such contract as they may choose to make with reference to the com-
pensation which shall be paid for the services to be rendered." It
is well settled that there is a marked distinction between limitation
of and exemption from liability. Section 20 of the act in question
directs the issuance of a receipt upon which the carrier is liable to
the holder for any loss caused by it or any connecting line, and pro-
vides that no contract shall exempt the carrier from that liability.
This language "establishes no new principle in the law." Munn v.

Illinois, 94 U. S. 113, 24 L. Ed. 77, decided that the state of Illinois might fix maximum charges for storing grain within the state. A careful reading of the opinion of Chief Justice Waite in that case fails to disclose a discussion of the right of such a common carrier as an express company ·to limit its liability for loss upon an agreed compensation. Here there is no allegation nor proof of monopoly. Upon complaint that defendant's rates were "exercised to the great injury of the trade," another question would arise. It is a matter of public knowledge that express companies transport specie, money, jewels, and many articles of great intrinsic value; that they have special accommodation for the care and delivery thereof; and that they demand a rate of compensation based upon the value of such shipments. Can it be justly said that the interstate commerce act deprives the express companies of the right of contract in such instances? Are not these in the nature of "private contracts"—a sort of insurance which the shipper may have if, at his election, he will pay for it? If the interstate commerce act gives to a bank the right to deliver to an express company $1,000,000 in currency for shipment at ordinary rates without disclosing that value, and the package is lost, and the bank may recover judgment for the full amount, surely express companies are confronted with a condition which finds no sanction in any adjudication of which I am aware. If the defendant may not by agreement with the shipper for a specific compensation limit and fix its liability, freedom of contract is impaired. Concededly the Congress has power to pass laws to regulate commerce between the states; but it has not been held, so far as I am informed, that any corporation or individual may not enter into a valid contract with a carrier for the shipment of goods wherein their mutual obligations are understood between them; and I incline to the opinion that the Congress by the passage of this act did not attempt to deprive any one of that right.

Judgment affirmed, with costs of this appeal to the respondent.

