(62 Misc. Rep. 364.)

### VIGOUROUX v. PLATT.

(Supreme Court, Special Term, New York County.   February, 1909.)

1. CARRIERS (§ 158*)—EXPRESS COMPANIES—LIMITING LIABILITY.
    Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892), providing that no contract shall exempt a common carrier from liability for injury to property shipped, caused by any carrier to whom such property may be delivered, a common carrier cannot limit its liability in case of loss from its own negligence to $50.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 664;  Dec. Dig. § 158.*]

2. CARRIERS (§ 159*)—NOTICE OF LOSS.
    A common carrier may require that in case of loss the company must be notified within 60 days from the issuance of the receipt.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 670;  Dec. Dig. § 159.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by one Vigouroux against one Platt. Demurrer to second defense in the answer sustained, and to first defense overruled.

Rounds & Schurman, for plaintiff.

O'Brien, Boardman & Platt, for defendant.

GOFF, J. Plaintiff delivered a bale of raw silk to the United States Express Company in New York City, to be sent to a certain address in Philadelphia. The usual shipping receipt was given plaintiff, which, among other clauses, contained the two upon which defendants rely for their two affirmative defenses. They read:

"* * * Nor in any case shall this company be held liable or reponsible, nor shall any demand be made upon them, beyond the sum of fifty dollars, at which sum said property is hereby valued, unless the just and true value is stated herein."

"In no case shall this company be liable for any loss or damage unless the claim therefor shall be presented to it in writing at this office within sixty days after this date, in a statement to which this receipt shall be annexed."

The bale was never delivered, and a written notice of the loss was not given the express company within the 60 days. The plaintiff now sues to recover the full value of the bale, which he alleges to be $881.-69. The defendants interpose two affirmative defenses, based upon the provisions already quoted. To these defenses plaintiff demurs.

The success or failure of these demurrers depends upon the construction to be given Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169) as amended on June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892). It reads in part as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed, provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

By section 1 express companies and sleeping car companies are included within the term "common carrier." The interpretation to be given to these sections must necessarily depend upon the object sought to be obtained by the amendment, if that intention can be discovered. In Chicago, etc., R. R. v. Ill. Cent. R. R., 13 Interst. Com. R. 26, referring to the question of through routes authorized by this amendment, it was held that the purpose of the amendment was to afford relief to the shipping communities, and not to aid carriers to acquire strategic advantages. Referring to the particular section of the act with which we are dealing, the same general intent clearly appears from the language of the act. 2 Lewis' Sutherland Statutory Construction, § 366.

We may consider at once the key word of the section in connection with the $50 clause of the receipt. It is contended that a limita-

tion of the value, presumably agreed upon by both parties, is not such an exemption as the act contemplates. To sustain this contention defendants rely upon the leading case of Hart v. Penn. R. R., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, in which Mr. Justice Blatchford said:

"The limitation as to value has no tendency to exempt from liability for negligence. * * * The distinct ground of our decision in the case at bar is that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

This may be taken to fairly represent the law up to 1906, although in a majority of jurisdictions, New York excepted, a carrier was not permitted to relieve itself from the fruits of its own negligence. This rule was founded upon the theory that both contracting parties stood upon an equal footing, and that if, in the exercise of their several rights, it was found advantageous to agree upon a definite sum as liquidated damages in case of loss, it was not for the court to intervene. This is the attitude assumed by the defendants in the case at bar, and is not warranted by the circumstances. This position of the courts was quickly taken advantage of by the carriers, who inserted a fixed and necessarily arbitrary amount in the printed body of all receipts, which was said to be the agreed valuation of the article between the parties.

While this continued to be the law, the provision of the fixed rate schedule was adopted in 1906. Had not a prohibition against this fixed liability been also added at the same time, the shipper would have been entirely at the carrier's mercy. He would have had but the alternative of dealing with the carrier upon its own terms, taking any receipt it offered, no matter to what extent its liability was reduced, or of refusing to ship goods at all. The shipper's position has long been recognized by the courts. "He cannot afford to higgle or stand out and seek redress in the courts. His business will not admit such a course. He prefers, rather, to accept any bill of lading or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases he has no alternative but to do this or abandon his business." Railroad Co. v. Lockwood, 17 Wall. 357, 379, 21 L. Ed. 627.

After 1906 there could be no concession of a reduced rate in consideration for a limited liability, or, what would be equivalent, placing the article in a lower schedule. A fixed rate was established for each class of commodity as far as possible, and, that no hardship might result to the shipper thereby, full liability was placed upon the carrier in the event of loss or damage, thus maintaining, as nearly as may be, an equal standing for both parties. In fixing these rates it has been held that:

"The elements of bulk, weight, value, and character are main considerations in determining approximately what freight articles are so analogous as to

entitle them to the same classification." Page v. D., L. & W. R. R., 6 Interst. Com. R. 548.

"It is a conceded rule of classification that value, on account of the enhanced risk and ability to pay a greater proportion of the aggregate return upon investment, may justify a higher classification." Schumacher Co. v. Chic., R. I. & P. R. R., 6 Interst. Com. R. 61.

All of these elements the carrier will take into consideration in fixing the rates; and, as it is to be presumed that every carrier has complied with the regulations as to their adoption and publication (Meeker et al. v. Lehigh Valley R. R. [C. C.] 162 Fed. 354), so it must also be inferred that it has placed the article received in the class to which it belongs and has charged the corresponding rate, in the absence of fraud or concealment on the part of the shipper. No such element, however, enters into the case at bar. It was, therefore, enacted in substance:

"That any common carrier * * * shall be liable * * * for any loss * * * caused by it or by any common carrier * * * to which such property may be delivered * * * and no contract, receipt, rule or regulation shall exempt such common carrier * * * from the liability hereby imposed."

In the light of these circumstances, can it be seriously urged that the word "exempt" should be interpreted, as it is used in the Hart Case, "to exempt from liability for negligence," which a common carrier has long been forbidden to do in most jurisdictions, or does the act not mean what it says, that the carrier shall be liable for any— which includes all—loss, and that any limitation on the liability thus imposed is an exemption pro tanto, and so forbidden? That would seem to be the only interpretation justified by the facts, and there is not wanting authority to support it. In Moore on Carriers (Ed. of 1906) we read, at page 330:

"Where a package is delivered to a carrier to be delivered in another state, the company's receipt, stating that it shall not be liable to the holder beyond a certain sum, at which the article forwarded is valued, which is not signed by the shipper, and no statement is made by him as to its value, is not a valid stipulation against the negligent loss of such package."

But the statute goes even further. See Greenwald v. Weir, 59 Misc. Rep. 431, 111 N. Y. Supp. 235, Schutte v. Weir, 59 Misc. Rep. 438, 111 N. Y. Supp. 240, and Shidlovsky et al. v. Mallory Steamship Co. et al., 60 Misc. Rep. 67, 111 N. Y. Supp. 778.

The demurrer to the second affirmative defense raises a different question. The case and text books are so full of authorities which permit a common carrier to adopt reasonable regulations for the conduct of its business that a review of these here would be impracticable and unnecessary. The necessity for a regulation that notice must be given or action brought within a fixed time, much shorter than the statutory period, is well expressed in the case of Southern Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556:

"The object of such a clause, like one requiring claim to be presented or notice or loss given within a specified time, is to enable the carrier to search for the missing goods or find out the true cause of the loss or injury. Finding the missing goods, it may either deliver them to the consignee or redeliver them to the shipper. Failing to discover the goods, it can place the responsi-

bility for the loss where it properly belongs and seek indemnity from the persons guilty of the wrong. Finding the real facts as to the loss or injury, it may be in a position to defend itself, where lapse of time might have deprived it of all facilities for ascertaining the true cause of the loss or injury. The law recognizes that the purpose is reasonable and just, and hence sustains the validity of such cases where the time and conditions are reasonable under all the circumstances." Moore on Carriers (Ed. of 1906) p. 332; Jennings et al. v. Grand Trunk R. R., 127 N. Y. 438, 451, 28 N. E. 394; Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556.

The only question which arises here is whether this established custom has in any way been abridged by the amendment of 1906. Section 20 requires that a receipt be issued, that the carrier be liable to the lawful holder for any loss occasioned either by itself or by any connecting carrier, and that nothing shall exempt such carrier from these requirements. Can it be said that any reasonable regulation exempts the carrier from any of the above provisions? As long as the shipper complies with such regulations the carrier is liable in full amount for all loss occasioned by it or by a connecting carrier. A time requirement within which notice must be given does not even reduce the period within which suit must actually be commenced. This case differs widely from that of the $50 limitation by which the carrier sought to exempt itself from a portion of its total common-law liability. There the shipper was helpless. He was deprived of all right of recovery save as to the $50, and nothing he could do could in any way alter the situation.

But as to reasonable time regulations we are confronted by an entirely different problem. "They do not relieve carriers from any part of their obligation as common carriers. They are bound to the same diligence, fidelity, and care as they would be required to exercise if no such stipulation had been made." Osterhoudt v. Southern Pac. Co., 47 App. Div. 146, 151, 62 N. Y. Supp. 134. And, we would add, they are bound to the same liability in damages. To hold otherwise would mean a sweeping away of every one of the hundreds of other reasonable requirements which such companies find it necessary to make for the orderly transaction of their business, and this would lead to a state of chaos which the framers of this act never for a moment contemplated.

What is a reasonable regulation, however, is a question of fact, and cannot be determined on this demurrer. For what has been held a reasonable time, see 6 Cyc. 505–507. It is sufficient for this decision that the requirement of written notice within 60 days from the date of the receipt does not upon its face appear unreasonable as a matter of law. The provisions of the receipt are readily severable, and as the plaintiff "separately demurs to the separate defenses, * * * and to each of them," they should be separately decided.

The demurrer to the second separate defense is sustained. Leave is given to defendant to plead over. The demurrer to the first separate defense is overruled.