### PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* MITCHELL.

[No. 21,494. Filed April 26, 1910. Rehearing denied February 14, 1911.]

1. CARRIERS.—*Freight.*—*Railroads.*—*Courts.*—*Jurisdiction.* — *Interstate Commerce.*—In an action of assumpsit against a railroad company, the complaint alleging that the defendant railroad company agreed with the plaintiff, for a consideration, to transport certain apples for the plaintiff to a point in Florida, and that because of defendant's unreasonable delay such apples spoiled, the answer being a general denial and a special answer alleging a contract whereby defendant's liability was limited to damages occurring upon its own line, and that the delay and destruction did not occur upon its own line, the reply being a general denial, and a special one of want of consideration for such contract, the state court has jurisdiction, the interstate commerce act being only incidentally involved. pp. 200, 201.

2. INTERSTATE COMMERCE.—*Control of.*—*States.*—The federal government has exclusive control over interstate commerce, but such control is for the benefit of the states and their citizens. p. 201.

3. COURTS.—*Federal.*—*Exclusive Jurisdiction of.*—The federal courts have exclusive jurisdiction only when a federal case arises from the cause of action stated. p. 203.

4. COMMERCE.—*Interstate.* — *Courts.* — *Jurisdiction.* — *Statutes.* — Under section nine of the interestate commerce act (24 Stat. p. 382, 3 U. S. Comp. Stat. 1901 p. 3159) providing that any person claiming damages from an interstate carrier "may either make complaint to the commission * * * or may bring suit * * * in any District or Circuit Court of the United States of competent jurisdiction," but must elect which method he will adopt, and section twenty of such act, as amended by the act of 1906 (34 Stat. p. 595, U. S. Comp. Stat. Supp. 1909 p. 1166), providing that interestate carriers shall be liable to shippers, and

that "nothing in this act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies," and section twenty-two of such act, as amended in 1889 (25 Stat. p. 862, 3 U. S. Comp. Stat. 1901 p. 3171), providing that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute," a shipper whose interstate shipment was damaged may maintain an action therefor in the state courts. p. 203.

5. CARRIERS.—*Connecting.—Presumptions. — Complaint.* — A complaint alleging that defendant railroad company contracted to transport plaintiff's apples to a point in another state, does not give rise to a presumption that such point is not on defendant's line. p. 206.

6. CARRIERS.— *Connecting.— Liabilities.— Agency.— Railroads.*— A railroad company contracting to transport freight to a point beyond its own line, must be held to constitute the connecting carriers as its agents for the transportation of such freight. p. 206.

7. CARRIERS.—*Interstate.—Limiting Liability.—Bills of Lading.— Railroads.*—Provisions in a bill of lading issued by a railroad company for an interstate shipment, that no carrier "shall be liable for any loss thereof, or damage thereto, by causes beyond its control," and that "no carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route," are invalid, being in violation of section twenty of the interstate commerce act, as amended in 1906 (34 Stat. p. 595. U. S. Comp. Stat. Supp. 1909 p. 1166), providing that any carrier "receiving property for transportation from a point in one state to a point in another state  *  *  *  shall be liable  *  *  *  for any loss, damage, or injury to such property caused by it or by any common carrier  *  *  *  to which such property may be delivered or over whose line or lines such property may pass." p. 207.

8. COMMERCE.—*Interstate.—Rates.—Discriminatory.* — Differential and discriminatory rates are allowable under the interstate commerce act, where they are not unjust, or do not operate unfairly, and are the same for all persons similarly situated. p. 207.

9. CARRIERS.—*Interstate.—Limitations of Liability.—Choice of Rates.—Answer.*—Allegations in an answer that the contract set out in the answer was made "fairly and understandingly by said plaintiff, as governing the shipment and the terms and conditions under which said property was received for transportation," but failing to allege that the plaintiff was given an opportunity of choosing to ship under a contract providing for the common-law liability, as well as the limited liability, are conclusions, and fail to show a limited liability. p. 208.

10. CARRIERS.—*Freight.—Rates.—Interstate Commerce.*—The Indiana statute (§3919 Burns 1908, Acts 1905 p. 58, §2), requiring a common carrier, in order to limit its common-law liability, to show that its contract of limited liability was fairly entered into upon a sufficient consideration, after a fair and full opportunity was given to the shipper "to ship at a fair and reasonable rate without limitation of liability," does not violate the interstate commerce law.  p. 208.

11. CARRIERS.—*Freezing.—Acts of God.—Liability for.—Delay.*—An act of God, such as heat, or freezing, which destroys fruit shipped, cannot excuse the carrier unless such carrier was prevented from delivering the fruit by such act of God, and not from delay, or negligence.  p. 209.

12. CONSTITUTIONAL LAW.—*Due Process.* — *Interstate Commerce Law.—Carriers.—Liability.*—The interstate commerce law making the initial carrier of interstate commerce liable for loss on the line of any connecting carrier, and giving such initial carrier a remedy over against the connecting carrier, does not constitute a taking of the initial carrier's property without due process of law; and a carrier that selects the route of shipment is not in a proper position to raise such question, the presumption being that the connecting carrier selected is solvent; and the voluntary making of a through rate indicates a common control or arrangement for a continuous carriage.  pp. 209, 211.

From Henry Circuit Court; *Ed Jackson*, Judge.

Action by Daniel J. Mitchell against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*John L. Rupe, L. P. Newby* and *F. J. Newby*, for appellant. *Eugene H. Bundy* and *N. Guy Jones*, for appellee.

MYERS, J.—Appellee brought an action against appellant, alleging that on November 1, 1906, appellant, controlling and operating a line of railroad from Indianapolis, Indiana, to Cincinnati, Ohio, and other lines of railroad within and without the State of Indiana, was a common carrier for hire, engaged in interstate commerce, and held itself out as such common carrier of freight and passengers from Dunreith, Indiana, to New Smyrna in the State of Florida, on which day appellee delivered to appellant at its station at Dunreith, Indiana, a carload of apples, to be by it

carried and transported to New Smyrna, and as a consideration for the carriage of the apples to their destination, appellee paid to appellant in advance the full charges demanded by it.   Appellee averred that, by reason of unreasonable delays in transportation, the apples became spoiled in transit and were worthless, and he demanded judgment for $1,400.   Appellant answered by general denial, and by a special paragraph, setting up as a defense that appellant's line extended only to Cincinnati, Ohio, and no nearer New Smyrna, Florida, and that it made the shipment under a written contract or bill of lading, set out, alleged to have been entered into fairly and understandingly by appellee, governing the shipment and the conditions under which the property was received for shipment, by which the property was to be carried to Cincinnati over appellant's line, and there delivered to a connecting carrier; that it carried the property without delay, and delivered it in good order to the connecting carrier.

The contract recites the receipt of the apples consigned to appellee at New Smyrna, Florida, and some of its provisions are that its terms and conditions shall run to the benefit of any carrier, and that no carrier

"shall be liable for any loss thereof, or damage thereto, by causes beyond its control,   *   *   *   or by   *   *   * changes in weather, heat, frost, wet or decay.   *   *   * No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route. *   *   *   The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place of shipment under this bill of lading."

To this answer appellee replied by general denial, and specially that the written contract was executed without consideration.   The cause was tried by a jury, and a general verdict returned for $1,200, with answers to interrogatories. Over motions for judgment on the answers to interrogatories and for a new trial, judgment was rendered on the general verdict.

The first error urged here is the overruling of the motion for a judgment in favor of appellant upon the answers to the interrogatories.

These answers show that the shipment was made under the written contract; that appellant's own line extended to Cincinnati only, where it delivered the apples in good order to a connecting carrier; that the damage accrued after their delivery to the connecting carrier, and that there was no consideration for the written contract or bill of lading.

Appellant's argument is based on the theory that as the written contract by its terms limits its liability to loss occurring on its own line, it is discharged under the facts found.

1.    Closely allied to this contention is the further insistence that the opening statement of counsel for appellee to the jury—that the act of congress known as the Carmack amendment to section twenty of the interstate commerce act (34 Stat. p. 595, U. S. Comp. Stat. Supp. 1909 p. 1166) rendered the bill of lading void as a defense—was erroneous and prejudicial. The question was presented by motion to the court to have the statement withdrawn from the jury. The question was presented again at the close of the evidence by a motion to dismiss the action for want of jurisdiction, and upon the motion for a new trial, on the grounds that there was error in giving instruction and that the verdict was contrary to law, the theory being that the interstate commerce act has no application, except in cases arising under that act, brought in the federal courts, and that no other courts have jurisdiction to enforce its provisions.

We are thus confronted with the question of jurisdiction. The complaint, it will be noted, counts upon a common-law liability, and also contains the averments required by the act of April 15, 1905 (Acts 1905 p. 58, §§1–3, §§3918–3920 Burns 1908.

Upon the face of the complaint no statute is invoked except the act of 1905, and the allegations thereof give the

court jurisdiction of the subject-matter. The federal statute is invoked only incidentally, as a reply to the defense sought to be interposed by the bill of lading.

We are not able to discover that the precise question has received the attention of the Supreme Court of the United States, but strong analogies may be found in the pronouncements of that court. The acts of congress in force, relating to subjects over which congress has power to legislate for the states, are expressly declared by the statute to be the law of the states. §236 Burns 1908, §236 R. S. 1881.

Interstate commerce is within the exclusive regulation of congress, but it is regulation within and for the benefit of the states and their citizens. "The laws of the United States are laws of the several states and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction, a paramount sovereignty. Every citizen of a state is a subject of two distinct sovereignties, having concurrent jurisdiction in the state; concurrent as to place and persons, though distinct as to subject-matter. * * * So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the state courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, congress may, if it see fit, give to the federal courts exclusive jurisdiction. * * * This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an act of congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford

relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent." *Claflin* v. *Houseman* (1876), 93 U. S. 130, 136, 23 L. Ed. 833. The case of *Pratt* v. *Paris, etc., Coke Co.* (1897), 168 U. S. 255, 18 Sup. Ct. 62, 42 L. Ed. 458, is instructive and to the point. In that case plaintiff in error sued the defendants in error in a state court, in assumpsit— a common-law action—on the common counts for the price of a patented machine. Defendants answered that the patent was void, that it was an infringement on prior patents, that plaintiff had no right to use it, and that the consideration had failed. The question arose on the trial, when the court admitted evidence tending to show that the patents were invalid as infringements. Plaintiff in error contended that the court thereby assumed jurisdiction of a patent case. The Supreme Court, speaking by Mr. Justice Brown, said: " The state court had jurisdiction of the parties and the subject-matter as set forth in the declaration, and it could not be ousted of such jurisdiction by the fact that, incidentally to one of these defenses, the defendant claimed the invalidity of a certain patent. To hold that it has no right to introduce evidence upon this subject is to do it a wrong and deny it a remedy. Section 711 [§711 R. S. U. S. 1874, 1 U. S. Comp. Stat. 1901 p. 577] does not deprive the state courts of the power to determine questions arising under the patent laws, but only of assuming jurisdiction of 'cases' arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the patent laws

as ground for a recovery." In order that exclusive jurisdiction shall be in the federal courts, a federal case must arise from the cause of action stated. *Riverside Mills* v. *Atlantic, etc., R. Co.* (1909), 168 Fed. 987; *Osborn* v. *U. S. Bank* (1824), 9 Wheat. *738, *824, 6 L. Ed. 204.

It is urged that jurisdiction is in the federal court, by virtue of section nine of the interstate commerce act, which reads in part as follows: " That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt." This section was enacted in 1887. 24 Stat. p. 382, 3 U. S. Comp. Stat. 1901 p. 3159.

If the case stood upon that section alone, there might be room for argument that the language excludes state jurisdiction. But the amendment of section twenty of June 29, 1906, introduces into the law an element wholly lacking under section nine, *supra*, when the latter was enacted. The amendment is as follows: " That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or trans-

portation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." 34 Stat. p. 595, U. S. Comp. Stat. Supp. 1909 p. 1166.

It is the injection of section nine into the cause which appellant urges as disclosing the want of jurisdiction in the court below. The proviso of section twenty is an express recognition of the cumulative character of the act. In addition to existing rights, either at common law, or under state statutes, and an express reservation of the right to maintain any action which might be maintained irrespective of the act, it seems to us that the act expressly confers concurrent jurisdiction upon the state courts, and that the general law giving the federal court jurisdiction, obtains only in cases where the amount demanded is in excess of $2,000. That is the view of the supreme court of Kentucky, as expressed in the case of *Louisville, etc., R. Co.* v. *Scott* (1909), 133 Ky. 724, 118 S. W. 990.

Section twenty-two of the act, as amended in 1889, provides that "nothing in this act contained shall in anyway abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." 25 Stat. p. 862, 3 U. S. Comp. Stat. 1901 p. 3171. The Supreme Court of the United States in the case of *Texas, etc., R. Co.* v. *Abilene Cotton Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, speaking by Mr. Justice White, said on page 446: "The clause is concerned alone with rights recognized in or duties imposed by

the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act." This amendment of section twenty-two in 1889, of course, had a purpose, as disclosed by the decision before quoted, in making clear, concurrent jurisdiction, if it had not before existed, though the phrase in section nine "of competent jurisdiction," as we understand it, refers to such jurisdiction as then existed in federal district and circuit courts, concurrent with the state courts. It has been expressly held in many of the states that the provisions of section twenty of the interstate commerce act are the subject of cognizance and enforcement by state courts; and it has been so held by our Appellate Court. *Pittsburgh, etc., R. Co.* v. *Wood* (1909), 45 Ind. App. 1; *Midland, etc., R. Co.* v. *Hoffman Coal Co.* (1909), 91 Ark. 180, 120 S. W. 380; *Galveston, etc., R. Co.* v. *Crow* (1909), 117 S. W. (Tex. Civ. App.) 170; *Chicago, etc., R. Co.* v. *Clements* (1909), 55 Tex. Civ. App. 143, 115 S. W. 664; *Galveston, etc., R. Co.* v. *F. A. Piper Co.* (1908), 52 Tex. Civ. App. 568, 115 S. W. 107; *St. Louis, etc., R. Co.* v. *Grayson* (1909), 89 Ark. 154, 115 S. W. 933; *Murray* v. *Chicago, etc., R. Co.* (1894), 62 Fed. 24, 42; *Southern Pac. Co.* v. *Crenshaw* (1909), 5 Ga. App. 675, 63 S. E. 865; *Georgia Railroad* v. *Creety* (1909), 5 Ga. App. 424, 63 S. E. 528; *Brantley Co.* v. *Ocean Steamship Co.* (1909), 5 Ga. App. 844, 63 S. E. 1129.

The complaint here states a common-law action. No federal question is presented by it. The shipment was interstate. The interstate commerce act is a part of the laws of this State, and enforceable in its courts when rights under it, and given by it, incidentally arise in a trial.

Passing to the second question involved, viz., the effect of the contract of shipment upon the limitation of liability, the adjudications are numerous that the contract is invalid,

owing to the provisions of the interstate commerce act. The bill of lading seeks, in many respects, to limit liability as to each carrier *en route*. It seeks first to limit liability for loss or damage occurring while the property was in the possession of appellant. That limitation was simply declarative of the common law.

The complaint alleges an undertaking to transport to and deliver at New Smyrna, Florida. We cannot presume that New Smyrna is beyond appellant's own line. The answer contains a contract to "carry to its usual place of delivery at said destination, if on its own road, otherwise to deliver to another carrier on the route to said destination," but avers that New Smyrna is beyond its own line, so that at one and the same time it was attempting to restrict liability so far as it was itself concerned, and also undertaking to transport to a fixed destination, and making a contract limiting the liability and contracting for the benefit of every carrier *en route*, upon the identical terms and conditions as in case of its own carriage. The whole scope of the contract then is an undertaking by appellant to carry beyond its own line, and deliver the fruit, and having thus undertaken transportation to the destination, and received pay for the whole distance, with a contract running equally to its own benefit, and that of any carrier *en route*, the liability attaching upon delivery to it for carriage continues throughout the whole transit, and the connecting carrier or carriers *en route*, employed in the transportation, are the agents of the initial carrier in carrying out the particular contract. *Chicago, etc., R. Co.* v. *Woodward* (1905), 164 Ind. 360; *Texas, etc., R. Co.* v. *Reiss* (1902), 183 U. S. 621, 22 Sup. Ct. 253, 46 L. Ed. 358; *Bank of Kentucky* v. *Adams Express Co.* (1876), 93 U. S. 174, 23 L. Ed. 872; *Smeltzer* v. *St. Louis, etc., R. Co.* (1908), 158 Fed. 649; *Virginia Coal, etc., Co.* v. *Louisville, etc., R. Co.* (1900), 98 Va. 776, 37 S. E. 310; *Johnson* v. *Toledo, etc., R. Co.* (1903), 133 Mich. 596, 95 N. W. 724, 103 Am. St. 464; *Ireland* v. *Mobile,*

*etc., R. Co.* (1899), 105 Ky. 400, 49 S. W. 188; *Eckles* v. *Missouri Pac. R. Co.* (1905), 112 Mo. App. 240, 87 S. W. 99; *Halliday* v. *St. Louis, etc., R. Co.* (1881), 74 Mo. 159, 41 Am. Rep. 309; *Jennings* v. *Grand Trunk R. Co.* (1891), 127 N. Y. 438, 28 N. E. 394; *Condict* v. *Grand Trunk R. Co.* (1873), 54 N. Y. 500; *Galveston, etc., R. Co.* v. *Allison* (1883), 59 Tex. 193; *Texas Express Co.* v. *Dupree* (1884), 2 Tex. App. Civ. Cas. 274; *Texas, etc., R. Co.* v. *Scrivener* (1884), 2 Tex. App. Civ. Cas. 284; *Cincinnati, etc., R. Co.* v. *Pontius* (1869), 19 Ohio St. 221, 2 Am. Rep. 391; *Merchants, etc., Transp. Co.* v. *Bloch Bros.* (1888), 86 Tenn. 392, 6 S. W. 881, 6 Am. St. 849; Lawson, Carriers §235; 6 Cyc. 479, 481.

If, as we believe, the interstate commerce provision is cognizable and enforceable in the state courts in a common-law action in rebuttal of a defense sought to be made 7. under a bill of lading, it follows that the provision limiting liability to loss occurring while on appellant's own line is invalid. See section of statute before quoted invalidating the alleged contract. *Kansas City, etc., R. Co.* v. *Carl* (1909), 91 Ark. 97, 121 S. W. 932; *Louisville, etc., R. Co.* v. *Scott, supra; Galveston, etc., R. Co.* v. *Crow, supra; Galveston, etc., R. Co.* v. *F. A. Piper Co., supra; St. Louis, etc., R. Co.* v. *Grayson, supra; Smeltzer* v. *St. Louis, etc., R. Co., supra; Travis* v. *Wells, Fargo & Co.* (1909), 79 N. J. L. 83, 74 Atl. 444; *Vigouroux* v. *Platt* (1909), 115 N. Y. Supp. 880, 62 Misc. 364; *Shidlovsky* v. *Mallory, etc., Co.* (1908), 111 N. Y. Supp. 778, 60 Misc. 67; *Greenwald* v. *Weir* (1908), 59 Misc. 431, 111 N. Y. Supp. 235; 1 Hutchinson, Carriers (3d ed.) §§235, 240.

It is suggested that the Indiana statute is contrary to the interstate commerce act, in that the latter recognizes but one rate. We do not so understand that act. Differ- 8. ential and discriminative rates are allowable, so long as they are not unjust or do not operate unfairly. *Poor* v. *Chicago, etc., R. Co.* (1907), 12 Interstate Commerce Rep. 418; 2 Hutchinson, Carriers (3d ed.) §538.

The essence of that act is, that whatever the rate, it shall be the same to all persons, similarly situated.

It is next urged that the special contract releases liability for losses beyond the carriers' control, which it is urged is the same thing as the act of God, or the public enemy, and specifically, that there is a release of liability for "loss due to changes in weather, heat, frost, wet or decay," and that the evidence shows loss from heating or freezing, or both.

There is no pretense that appellee was given a *bona fide* opportunity to ship at a fair and reasonable rate, without limitation of common-law liability, or that he was offered more than the one rate, or that there was any consideration for such limitation. The pleading merely alleges that the contract was made "fairly and understandingly by said plaintiff, as governing the shipment and the terms and conditions under which said property was received for transportation." The allegations not only fail to comply with the statute, or to bring the case within the common law, but are conclusions. We are not to be understood as holding that there may be no limitation of liability, nor does the interstate commerce act, under the construction placed upon it, so declare. The common-law right to contract with respect to the value of an article to be transported, upon the character and value of which a rate may depend, and the right to contract against loss beyond the carrier's control, are unaffected by the interstate commerce act, though the contract must be fairly made, upon a sufficient consideration, after the shipper has been given an opportunity to choose between the common-law right, and rate, and the special contract rate and limited liability. §3919 Burns 1908, Acts 1905 p. 58, §2; *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466; *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 63 L. R. A. 948; *Travis* v. *Wells, Fargo & Co., supra; Greenwald* v. *Weir, supra; Hart* v. *Pennsylvania R. Co.* (1884), 112 U. S. 331, 5 Sup. Ct. 151,

28 L. Ed. 717; *In re Released Rates* (1908), 13 Interstate Commerce Rep. 550; 4 Elliott, Railroads §§1504, 1510.

For the like reason this right would also extend to the question here urged, that the contract limited the liability to the value of the apples at the place and time of shipment, instead of at the place of delivery, as at common law. *Chicago, etc., R. Co.* v. *Katzenbach* (1889), 118 Ind. 174. But as shown, the answer does not present that question.

The same thing is true as to the question of heat or frost, or both. But it is claimed that heat and frost are acts of God. Without stopping to inquire into that question, 11. it is well settled that if there is an intervening human agency that contributes to the loss, 'the burden is on the carrier to show that it was prevented from safe delivery by the act of God, and not from delay or negligence in transportation. *Blackstock* v. *New York, etc., R. Co.* (1859), 20 N. Y. 48, 75 Am. Dec. 372; *Weed* v. *Panama R. Co.* (1858), 17 N. Y. 362, 72 Am. Dec. 474; 4 Elliott, Railroads §§1455, 1457; 1 Hutchinson, Carriers (3d ed.) §§287–289, 297–307.

The complaint alleges that the loss occurred from unreasonable delay in transportation, and the facts disclose that a reasonable time for the carriage was from five to seven days, and that nineteen days were consumed in the transportation, and this delay is wholly unaccounted for. If the loss was due to heat or freezing, and they can be said to be acts of God, it was still incumbent upon appellant to show that it was not due to the negligence or delay in transporting, or in the language of the cases, an intervening human agency.

The constitutionality of the interstate commerce act as to the question of fixing primary responsibility upon the initial carrier, is challenged, on the ground that it 12. constitutes the taking of private property without due process of law, in requiring such carrier to look to the connecting carrier, in violation of the 5th amendment, and section one of the 14th amendment to the federal Con-

stitution, and because it is not a regulation of commerce, but requires one carrier to answer for the default of another, irrespective of solvency or insolvency in the latter, with whom it has no contract relations, and over which it has no control, with the right in the shipper to route the shipment as he pleases, and provides no adequate indemnity or means of enforcing the demand against the delinquent carrier. As to the last point it may be said that the same act that fixes the liability on the initial carrier fixes it on the connecting carrier, and also provides for enforcing the obligation. Whether the fact that the shipper has the right of selecting the route is material or not, there is nothing to indicate any such course in this case, and it will be presumed that appellant selected a solvent agent, and is in no situation to raise the question in this case. The voluntary making of a through rate indicates a common control, management or arrangement for a continuous carriage or shipment. *Interstate Commerce Com.* v. *Louisville, etc., R. Co.* (1902), 118 Fed. 613; *United States, ex rel.,* v. *Seaboard R. Co.* (1897), 82 Fed. 563.

The fact that appellant undertook a through shipment is quite indicative of coöperative relations with other carriers. As to whether the act is a regulation of commerce, it is urged that it does not attempt to regulate carriage by the initial carrier, or prescribe the method of conducting business by any carrier. It seems to us that those very facts, if true, commend it, for it leaves to carriers the methods of carriage and the general conduct of their business. The act as a whole certainly does control interstate shipments in many respects, and as between initial and other carriers makes it one carriage. The validity of the act, as applied to the due process of law clauses of the Constitution, has several times been declared. *Riverside Mills* v. *Atlantic, etc., R. Co.* (1909), 168 Fed. 987; *Smeltzer* v. *St. Louis, etc., R. Co., supra; Galveston, etc., R. Co.* v. *Crow, supra; Galveston, etc., R. Co.* v. *F. A. Piper Co., supra; Greenwald* v. *Weir, supra.*

Errors are predicated upon instructions given on request of appellee, and in refusing to give those requested by appellant. The instructions given are not objected to as to any specific matter, but on the ground that they generally presented an erroneous theory of the law applicable to the case as here shown by the insistence of appellant, which theory was correct. Those requested by appellant and refused present its theory, which, as we view it, was erroneous. No good purpose can therefore be subserved in setting out the instructions.

We conclude that the judgment should be affirmed, and it is so ordered.

## ON PETITION FOR REHEARING.

MYERS, C. J.—We have withheld action upon the petition for a rehearing in this cause, awaiting the decision of the Supreme Court of the United States as the final arbiter, involving the question originally determined by us, as to the validity of the Carmack amendment to the interstate commerce act, and that is the question upon which rehearing is urged. This question was determined in that court on January 3, 1911, in the case of *Atlantic, etc., R. Co.* v. *Riverside Mills* (1911), 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, adversely to the contention of appellant.

The petition for a rehearing is therefore overruled.