CASE 38—PETITION ORDINARY—MAY 3.

# Louisville & Nashville Railroad Co. v. Queen City Coal Co.

### APPEAL FROM LAUREL CIRCUIT COURT.

1. COMMON CARRIER—WHEN ITS DUTY TO FURNISH CARS.—It is the duty of a common carrier to acquire facilities for the transportation of commodities which it gives the public to understand it is engaged in carrying, in such quantities as may be ordinarily expected to seek transportation; but it is not required to anticipate an unprecedented and unexpected press of business, and to keep extra rolling stock to meet such a contingency; and under such circumstances it may decline to receive freight for transportation without incurring any liability.

2. SAME.—Where a railroad company received its coal supplies necessary to operate its engines from a coal district on its line, and there was a strike of the employes of all the coal companies in that district, except one, and the railroad company was compelled to take all its available rolling stock to another coal district in order to haul coal to supply its engines, it had a right to refuse to furnish cars for the transportation of coal to the one company in operation in the first district.

J. W. ALCORN AND J. A. CRAFT FOR APPELLANTS.

1. On a former appeal in this case the Superior Court held that where a railroad company by a strike of the miners at coal mines from which it had been accustomed to obtain a large part of the coal which it used in the operation of its road, was compelled to seek other fields for a supply, thus making it necessary to withdraw its engines and cars from that line of its road and use them in carrying coal for its own consumption, these facts constituted a sufficient excuse for its refusal to furnish the owners of a coal mine on that line of its road with engines and cars for the transportation of their coal.  (13 Ky. Law Rep., 832.)

2. The verdict is not sustained by the evidence or the preponderance thereof.

3. The instruction as to the measure of damages was erroneous. It authorized the jury to find in damages "any reasonable profits he could have made from the coal which *could* have been mined during that time by the miners in his employment," thus basing the damages upon the *utmost capacity* of the miners to dig coal during that time.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

East Bernstadt is a station on the Knoxville branch of the L. & N. R. R., and situated within the territory wherein coal mining is carried on, known as the Laurel district. The Queen City Coal Co. operated a mine and shipped its coal from East Bernstadt on appellant's road. After the middle of August, 1887, until some time in the following September the appellant refused to furnish appellee coal cars for the shipment of coal. It had been the custom of the appellant to so furnish coal cars to the appellee previous to that time. On or about the 16th of August, 1887, appellant's agent gave the appellee notice that no cars would be furnished for the shipment of coal to private persons.

This action was instituted by appellee to recover damages of appellant on account of such refusal. The appellant is a common carrier, had provided itself with cars and engines suitable for the transportation of coal, and by that method and in receiving and carrying coal had notified the public it was engaged in the business of carrying coal. The fact that it carried such coal as was offered for shipment before and after the time mentioned showed it had provided itself with reasonable facilities and appliances for the transportation of coal from the Laurel district. It is the duty of a common carrier to acquire facilities for the transportation of commodities which he gives the public to understand he is engaged in transporting. In doing so he is only

required to place himself in such situation as will enable him to carry the quantity of such commodities as may be ·ordinarily expected to seek transportation. He is not required to anticipate an unprecedented and· unexpected press of business and to keep extra rolling stock to meet such contingency. (Hutchison on Carriers, section 292.)

"He may refuse goods beyond the facilities he possesses for transporting them. When, by reason of unusual pres· sure of business, the rolling stock of a railroad is inadequate for the transportation of freight, the company may decline to receive without incurring any liability." (Lawson's Rights, Remedies and Practice, section 1804.)

The same doctrine is enunciated in H. & T. C. Ry. Co. ·v. Smith, 63 Texas, 322 and Thayer, &c. v. Burchard, 99 Mass., 508.

A strike of the coal miners in the Laurel district (except the mines of the appellee) began between the 1st and 15th of August, 1887, and continued until some time in the following September. The uncontradicted testimony in this record shows that the L. & N. R. R. Co. procured the supply of coal from this district for the use of the engines on certain parts of its road; that when the strike began this supply failed; that it was then compelled to take much of its rolling stock used for transportation of coal from the Laurel district to the Henderson division to transport coal from the mines on that division to supply coal for its engines; that the rolling stock which had been used on the Knoxville branch for the transportation of coal was neces- sarily used for the purpose of carrying coal for the use of its engines, for carrying cross ties for its road, etc.; that the change of the base of supplies caused delay in getting the coal cars from the Knoxville branch to the··Henderson

division; that the distance from the Laurel mines to Louisville, where the coal was carried for distribution to the engines, was 150 miles, and from mines from which coal was carried over the Henderson division it was 220 miles, thus requiring more cars and engines to transport the needed coal; that soon after the strike ended the railroad began to furnish the appellee and other coal operators in the Laurel district with cars necessary to transport their coal.

These facts excused the appellant in its refusal to furnish appellee with cars to carry coal, while the conditions existed which we have related. The only testimony introduced to contradict the undisputed testimony for the appellant is the testimony of some witnesses to the effect that on occasions during the strike some empty coal cars were seen in switches on the Knoxville branch. Admitting this to be true, it does not contradict the testimony of the witnesses of the appellant materially. Some of these cars might have been out of repair, others awaiting engines to haul them to other coal mines on the Henderson division, and the others awaiting the necessary business of the appellant. After the strike began all local coal trains were discontinued.

The appellant was not bound to take an engine, gather up coal cars and transport the coal of the appellee. The appellant owed a duty to the public to keep its freight and passenger trains on its lines of road running. It could only do this by obtaining the necessary fuel for its engines. To obtain this it was necessary, as appears from this record, to change rolling stock from the Knoxville to the Henderson division. It was far more important that the appellant should continue its general freight and passenger business on such lines as were supplied with fuel from Louisville

---

than to transport the coal for the appellee. The evidence offered by the appellee did not in a material degree contradict that of appellant, and the verdict is not supported by. the evidence. For that reason a new trial should be granted.

We have not considered the question as to the measure of damages had the plaintiff's evidence sustained the verdict, because the rule as stated in the opinion of the Superior Court must control in this case, regardless of our view as to the correctness of the opinion of that court on that question.

The judgment is reversed, with directions to' grant the appellant a new trial, and for further proceedings consistent with this opinion.