JOHNSON v. TOLEDO, SAGINAW & MUSKEGON RAILWAY CO.

1. CARRIERS—PERISHABLE SHIPMENTS—BILL OF LADING—THROUGH CONTRACT—ICED CARS—NEGLIGENCE.

Where a carrier gave a bill of lading for a car of perishable fruit consigned to a point in another State beyond its own line, specifying the route to destination, and reciting that the property was received subject to the carrier's liability under the common law and statutes in force in the various States through which the goods might pass, and that the car was to be iced at G., and re-iced as often as necessary, the carrier issuing such bill was liable for damage to the fruit caused by a failure to keep the car properly iced, whether the default was its own or that of a connecting carrier.

2. SAME—EVIDENCE—QUESTION FOR JURY.

Where, in an action against a carrier for injuries to fruit shipped under a contract requiring that the cars should be properly iced when delivered, there was some evidence that the cars furnished were inadequately iced, and that they were delayed in transit before delivery to a connecting

carrier, whether the injury occurred while the cars were on defendant's line was a question for the jury.

3. SAME—SHIPPER'S KNOWLEDGE OF DEFAULT.

Where a bill of lading for the shipment of fruit provided that the cars should be iced at G., and re-iced as often as necessary thereafter, the fact that the shipper discovered that the cars were insufficiently iced before their departure did not impose a responsibility upon him or relieve the carrier, if the shipper had no opportunity to remedy the situation, and believed that the fruit would reach G. without injury.

Error to Kent; Perkins, J. Submitted February 4, 1903. (Docket No. 67.) Decided June 30, 1903.

*Assumpsit* by Charles A. Johnson and August A. Johnson, copartners as C. A. Johnson & Company, against the Toledo, Saginaw & Muskegon Railway Company, for the breach of a contract of carriage. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Reversed.

*Burlingame, Belden & Orton,* for appellants.

*E. W. Meddaugh* (*Geer & Williams,* of counsel), for appellee.

HOOKER, C. J. The plaintiffs have appealed from a verdict directed in favor of the defendant. They were copartners engaged in the business of buying and shipping fruit at Sparta. On September 25th the defendant sent to Sparta two refrigerator cars for their use, each car being furnished with 2,000 pounds of ice at Greenville, 26 miles distant. Plaintiffs began loading these cars the same afternoon, and finished the next morning by 9 o'clock. After the loading, and before the cars left Sparta, they accepted from the defendant's agent at Sparta the bills of lading which are claimed to constitute the contract between the parties. One of these cars was billed to Columbus, Ohio, the other to Indianapolis, Ind. When the cars reached their respective destinations, it was found that

the fruit had become heated and injured, and this action was brought to recover damages resulting therefrom. The following is a copy of the bill of lading for one of the cars, and the other is similar, except as to destination:

"Grand Trunk Railway System.
" Bill of Lading.
" Chas. M. Hays, General Manager.

"Sparta, Mich., Station, Sept. 26, 1900.

" Received from C. A. Johnson & Co., by the T., S. & M. Ry., in apparent good order (or as noted), the property described below (contents and value of package unknown), marked and consigned as per margin, and subject to carriers' liability under the common law and statutes in force in the various States, Territories, provinces, or foreign countries through which the goods may pass.

"This bill of lading to be presented by consignee without alteration or erasure. If the property is not removed by the consignee within twenty-four (24) hours after reaching destination, it will be retained in car or otherwise stored at owner's risk, subject to charge for use of said car or other storage; same, together with transportation charges, shall be a lien on the property.

" Any overcharge occurring on this bill of lading will be promptly adjusted.

" This bill of lading contracts rates from Sparta to Columbus, Ohio, via ——, at —— per ——, and charges advanced at $——.

| Marks, Consignee, etc. | Articles. | Weight, Subject to Correction. |
|---|---|---|
| Sutton Bros., Columbus, Ohio. N. D. R. L. No. 7,544. Via Hocking Valley. | 300 Bu. Peaches. O. R. Chgs. Gtd. S. L. & C. | 15,000 pounds. |

"Ice at Greenville, and re-ice as often as necessary to keep car thoroughly iced.

"R. D. Bancroft, Agent."

The evidence shows that the cars left Sparta the day that the loading was finished, and within an hour thereafter, and at that time the plaintiffs claim to have been

dissatisfied with the condition of the cars, and thought that the initial icing at Greenville had not been properly done. The cars arrived at Greenville somewhat late, owing to delays, and at half past 1 p. m. the defendant's employés commenced putting ice in them, and finished at 3:45 p. m. They put three tons of ice in each car. The cars arrived at Durand at 11:30 p. m., 72 miles from Greenville. Here they were separated. One proceeded at once over the Detroit, Grand Haven & Milwaukee division of the Grand Trunk Railway to Detroit, arriving there at 10 minutes past 7 a. m., and was delivered to the Lake Shore Company at 10 minutes past 10 a. m., of the 27th. Defendant's witnesses claim that the car was then found provided with sufficient ice. The car reached the Lake Shore icing station at Toledo at 2 a. m., September 28th, when 4,000 pounds of ice was supplied, and at 2:40 a. m. it left for Columbus, Ohio, over the Hocking Valley Road. The evidence indicated that there were two tons of ice in the car when it reached Toledo, according to plaintiffs' interpretation of it. The car reached Columbus before 3 a. m., September 29th. The ice boxes were then full of ice, but the temperature of the car is said to have been found high, and the peaches injured by overheating. The peaches were sold for $122.65 gross. They cost $295.

The other car left Durand on September 27th over the Grand Trunk Road, and reached Nichols, near Battle Creek, at 1:20 p. m. Plaintiffs say that defendant claims, but did not prove by competent testimony, that it was re-iced there. It left at 8:40 p. m., September 27th, and arrived at Grangers, Ind., about 1 o'clock a. m., September 28th. It was then transferred to the Big Four Road at a quarter of 7 a. m. of the 28th, the ice tanks being half full of ice. It left for Indianapolis, where it arrived early on September 29th. At 7 a. m. it was found to contain about 600 pounds of ice. The peaches were badly decayed, and the car was re-iced at once. The fruit was sold, and brought $94.70 gross, and the cost was $170.

It was admitted by defendant that the contract bound

it to take these cars to Detroit and Grangers respectively. The plaintiffs claimed that defendant was liable for the loss, because (1) it was due to its negligence, the cars not being properly iced at Greenville before being sent to Sparta, and a delay occurring between Greenville and Grangers. (2) "If any part' of the loss was due to the negligence of connecting roads, the defendant is liable therefor under the terms of the contract made, *i. e.*, the bills of lading used, and the attending circumstances."

We are of the opinion that the learned circuit judge was incorrect in saying that a through contract to transport to Columbus was not made by the defendant. If the provisions of the bill of lading ought not to be construed as showing such an intention, in view of the statement that the property was received "subject to carriers' liability under the common law and statutes," etc., we should not overlook the fact that it contained some other provisions giving rights to and imposing obligations upon both parties. Among these there are some which should be given little weight as evidence showing a through contract, though all may be consistent with such a contract. The provision regarding re-icing, however, is a significant one. There is nothing in the bill of lading, or proof, to show authority on the part of the agent or defendant company to bind connecting lines to "re-ice the car as often as necessary to keep the car thoroughly iced," yet it is evidently intended as a stipulation. It is contained in a receipt given to one shipping to a designated point by various lines stipulated. It is said that it only states a common-law liability of all roads. But does it not do more then state such a liability? The common law undoubtedly requires care in transporting perishable goods, and, under modern methods, we have no doubt that it would be held to extend to proper refrigeration, according to established custom. Was not the shipper given to understand that his car would at all times be kept thoroughly iced, whether essential to the preservation of the fruit or not, thus providing additional assurance of safety?

If this was not the intention, the provision was superfluous. To whom did the plaintiffs have a right to look for the performance of this engagement? There is nothing on the face of the record to establish privity between plaintiffs and connecting lines as to this provision. There might be privity under another construction of this writing, but only to the extent of the ordinary obligations arising out of the reception of the car as a common carrier. This defendant, if any one, made this promise, and against it, only, could it be enforced according to its terms.

Again, the court held that there was no question for the jury as to injury while the cars were upon defendant's road. Some correspondence, to be found in the files, relating to a proposed amendment of the record, indicates a misunderstanding between court and counsel, which explains the action of the court in this regard. As finally settled, the record contains some evidence tending to show that the cars were inadequately iced when furnished, and that plaintiffs were not aware of the fact until they were loaded, and too late to remedy the difficulty. It also appeared that the cars were delayed from two to three hours on their trip to Greenville; also that there was a delay, at Nichols, of one of the cars.

We do not overlook defendant's contention that plaintiffs accepted the bill of lading and are precluded from questioning what occurred before, but we think that they were entitled to a properly iced car under that instrument. Moreover, we are of the opinion that the alleged discovery that the cars were warm and insufficiently iced, before their departure, did not impose upon plaintiffs the responsibility, and relieve defendant from its obligation, if they had no opportunity to relieve the situation, or honestly believed the fruit would reach Greenville without injury. These were all proper questions for the jury.

The judgment is reversed, and a new trial ordered.

CARPENTER, GRANT, and MONTGOMERY, JJ., concurred. MOORE, J., did not sit.