CHICAGO, R. I. & P. RY. CO. v. LAWTON REFINING CO.*

(Circuit Court of Appeals, Eighth Circuit.   October 28, 1918.)

No. 5080.

1. CARRIERS ⬤═45—DUTY TO FURNISH CARS—JURISDICTION OF COURTS.
    The courts have jurisdiction over a suit by a shipper to compel a railroad company to furnish cars, as a shipper has a remedy by action for a carrier's refusal to accept proper shipments or supply reasonably adequate facilities.

2. CARRIERS ⬤═39—CARRIAGE OF GOODS—DUTY OF CARRIER.
    There is a general duty on common carriers to receive, and carry by suitable means, goods which they assume to transport, or which are usually carried.

3. CARRIERS ⬤═40—CARRIAGE OF GOODS—DUTY OF CARRIER.
    The obligation to carry goods safely often requires that special kinds of cars be supplied for the transportation of goods, which the carrier has accepted or holds itself out to carry.

4. CARRIERS ⬤═40—CARRIAGE OF GOODS—DUTY OF CARRIER.
    Where articles of an extraordinary character are offered, a carrier is not bound to accept them, or provide facilities of a different kind from those usually furnished for transportation; hence a railroad company was not required to furnish tank cars to carry the oils of a refinery.

5. CARRIERS ⬤═40—CARRIAGE OF GOODS—DUTY OF CARRIER.
    Where the tariffs of a railroad company, which owned no tank cars, did not purport that the tank cars would be furnished, held, the railroad company having leased tank cars some of which it allowed a refinery to use, might withdraw the use of the cars from the refinery when they were needed to carry water to supply its engines and roundhouses, etc.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the Lawton Refining Company against the Chicago, Rock Island & Pacific Railway Company. From an order granting a temporary injunction, defendant appeals. Order reversed and set aside, with directions.

C. O. Blake, of El Reno, Okl. (R. J. Roberts, W. H. Moore, and J. E. Du Mars, all of El Reno, Okl., on the brief), for appellant.

B. M. Parmenter, of Lawton, Okl., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This is an appeal from an order granting a temporary injunction. The plaintiff below was a corporation doing business at Lawton, Okl., as a refiner of crude petroleum oils. The defendant was a railway company doing business in Oklahoma, and having connection with plaintiff's refinery by means of a switch track. The parties will be referred to as the refining company and the railway company. The order of the court enjoined the railway company from failing to furnish to the refining company five designated tank cars for the transportation in Oklahoma of its products of gasoline, kerosene, and fuel oil. The facts are undisputed.

The refining company has been engaged in business since 1916. It

receives crude oil from stations in Oklahoma, and ships its refined products extensively to Oklahoma consumers. It has 25 tank cars of its own. The railway company owns no tank cars, but has leased some from private owners; but it has not supplied tank cars to patrons, except that the five cars in controversy had been furnished to the refining company for three months before this suit was begun. This was in pursuance of some arrangement between the companies; but counsel for the refining company denied that the injunction was asked in enforcement of any agreement.

The railway company is a member of the American Railway Association, and by its rules, as well as by common usage, cars are interchanged between railroads in the United States, and cars are distributed ratably to patrons needing them. The railway company would need a large number of tank cars in order to supply the demand of its patrons, if it undertook to furnish such cars, as very few railway companies furnish tank cars to shippers, and, under the usage of interchange of cars, many of the cars would be absent for long periods. The railway company publishes a tariff for the transportation of oil in tank cars. The five cars in controversy had been leased by the railway company from private owners, and for several years had been used by the railway company in carrying its fuel and water supply, and in transporting creosote oil for treatment of its ties and structural timbers.

At the time of this suit a prolonged drought in a portion of Oklahoma adjacent to the railway company's lines had caused a failure of its water supply at many stations, and it had become necessary to haul water over the railroad for use by its engines, its roundhouses, and other instrumentalities. It had no other tank cars available, except these cars, and no other means of securing water, and it intended to prepare them for that use, and had begun the alteration of one of the cars to fit it for such purpose, when the injunction was granted.

The questions involved in this appeal relate to the jurisdiction of the court over the subject-matter, and the sufficiency of the evidence to support the order.

It is to be observed that the injunction is limited to use of the cars in intrastate traffic, and that there was no evidence of the effect upon interstate commerce that would result from enforcement of the order. There was no evidence to show that any other shippers desired that the railway company should furnish them with such cars. Questions of dissemination are therefore not presented by this record, nor are there any questions arising under the acts of Congress regulating interstate commerce; but the case is to be determined by the laws in force in Oklahoma relating to intrastate shipments.

[1] A contention is made that the courts have no jurisdiction over questions relating to the duty of a carrier to furnish cars to a shipper, and that such an order should be made by an administrative body; but counsel do not advise us of any special tribunal having such powers. A similar contention was made in the case of U. S. et al. v. Pennsylvania Railroad Company, 242 U. S. 208, 37 Sup. Ct. 95, 61 L. Ed. 251, as to tank cars demanded for interstate shipments, and it was then held that, if any duty to furnish such cars exists, it is enforceable in the courts, not by the commission. For a carrier's refusal to accept prop-

er shipments, or to supply reasonably adequate facilities of carriage, the shipper has a remedy by action. Louisville & Nashville Railroad Co. v. F. W. Cook Brewing Co., 223 U. S. 70, 32 Sup. Ct. 189, 56 L. Ed. 355; Danciger et al. v. Wells Fargo & Co. (C. C.) 154 Fed. 379; Pennsylvania Railroad Co. v. Puritan Coal Mining Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Illinois Central Railroad Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 35 Sup. Ct. 760, 59 L. Ed. 1306; Missouri Pacific Railway Co. v. Larabee Flour Mills Co., 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352; Chicago, Burlington & Quincy Railway Company v. Burlington, C. R. & N. Railway Co. et al. (C. C.) 34 Fed. 481; Butchers' & Drovers' Stock Yards Co. v. Louisville & N. R. Co., 67 Fed. 35, 14 C. C. A. 290; Moore on Carriers, p. 3.

[2] The remaining question is the right of the refining company to the use of these specific tank cars. There is a general duty of common carriers to receive and carry, by suitable means, goods which they assume to transport or which are usually carried. Covington Stockyards Co. v. Keith, 139 U. S. 128, 11 Sup. Ct. 461, 35 L. Ed. 73; Atlantic Coast Line Co. v. Geraty, 166 Fed. 10, 91 C. C. A. 602, 20 L. R. A. (N. S.) 310; Citizens' Bank v. Nantucket Steamboat Co., 2 Story 16, Fed. Cas. No. 2730; McManus v. Lancashire R. R. Co., 4 H. & N. 327; Elliott on Railroads, §§ 1465, 1466, 1474.

[3] The obligation to carry goods safely often requires that special kinds of cars be supplied for the transportation of goods which the carrier has accepted, or which it holds itself out to carry, such as refrigerator cars for perishable products, stock cars for cattle, and the like. Atlantic Coast Line Co. v. Geraty, supra; Johnson v. Toledo S. & M. Ry. Co., 133 Mich. 596, 95 N. W. 724, 103 Am. St. Rep. 464; New York, P. & N. R. Co. v. Cromwell, 98 Va. 227, 35 S. E. 444, 49 L. R. A. 462, 81 Am. St. Rep. 722; St. Louis, I. M. & S. Ry. Co. v. Renfroe, 82 Ark. 143, 100 S. W. 889, 10 L. R. A. (N. S.) 317, 118 Am. St. Rep. 58; Di Giorgio I. & S. Co. v. Pennsylvania R. Co., 104 Md. 693, 65 Atl. 425, 8 L. R. A. (N. S.) 108; Baker v. Boston & M. R. Co., 74 N. H. 100, 65 Atl. 386, 124 Am. St. Rep. 937, 12 Ann. Cas. 1072; People v. St. Louis, A. & T. H. R. Co., 176 Ill. 512, 52 N. E. 292, 35 L. R. A. 656; Forrester & Co. v. Southern Ry. Co., 147 N. C. 553, 61 S. E. 524, 18 L. R. A. (N. S.) 508, 15 Ann. Cas. 143; Loomis v. Lehigh Valley R. R. Co., 208 N. Y. 312, 101 N. E. 907; Hannibal R. R. Co. v. Swift, 12 Wall. 262, 20 L. Ed. 423; Hutchinson on Carriers (3d Ed.) §§ 505, 508; Elliott on Railroads, §§ 1474, 1475.

[4] Where articles of an extraordinary character are offered, a carrier is not bound to accept them or to provide facilities of a different kind from those usually furnished for transportation. For this reason a carrier may be excused from acceptance of explosives or of goods that are improperly packed. Nitro-Glycerine Case, 15 Wall. 524, 21 L. Ed. 206; Harp v. Choctaw, O. & G. R. Co., 125 Fed. 445, 61 C. C. A. 405; California Powder Works v. Atlantic & P. R. Co., 113 Cal. 329, 45 Pac. 691, 36 L. R. A. 648; Union Express Co. v. Graham, 26 Ohio St. 595; Fitzgerald v. Adams Express Co., 24 Ind. 447, 87 Am. Dec. 341; Gulf, C. & S. F. Ry. Co. v. A. B. Frank Co. (Tex. Civ. App.) 48 S. W. 210.

There are other limitations of the carrier's duty to accept goods, growing out of the usual course of business and the limitations of convenience. An express company that handles parcels is not bound to accept articles of great bulk, such as lumber and hay; nor are carriers bound to accept as baggage articles that, by reason of bulk or value transcend the carrier's customary limitations. Pfister v. C. P. R. R., 70 Cal. 169, 11 Pac. 686, 59 Am. Rep. 404; Elliott on Railroads, § 1466.

The ordinary freight cars of the railways, because of their dimensions, impose restrictions of length, width, and height to commodities that may be carried, and they are also unsuitable for the transportation of articles such as acids, oils and gases, which are not packed in containers. In the case of U. S. et al. v. Pennsylvania Railroad Co., 242 U. S. 208–231, 37 Sup. Ct. 95, 61 L. Ed. 251, the Supreme Court recognizes the fact that a tank car is not only a car but a package for the goods. If the producer of oil may demand of the carrier a specially constructed car suitable as a container of the article produced by him, no reason is perceived why the producers of the various forms of gases, liquids, and solids may not also require peculiar cars suitable for such unpacked products. In the case of In the Matter of Private Cars, 50 Interst. Com. Comn. R. 652, July 31, 1918, the Interstate Commerce Commission found that there are 59 varieties of liquids that are regularly transported in tank cars. It is there said:

"Cars used to transport the different liquids cannot be interchanged readily; that is to say, a tank car loaded with fuel oil with an asphalt base cannot be reloaded with refined oils, such as gasoline or kerosene, nor with edible oils, such as cottonseed or cocoanut, without thorough cleaning at an expense of from $5 to $35 per car. A car in which has been transported any of the petroleum oils cannot be used for molasses or other edible liquids, without thorough cleaning to remove every vestige of oil and odor. Some acids require peculiarly constructed cars. A car for tannic acid must be coated on the inside with acid-resisting material and all fittings must be of brass. Muriatic acid requires a wooden lined tank. Wine cars are mounted with a steel tank, lined on the inside with special enamel, surrounded on the outside with a wooden tank, with insulating material between it and the steel, to preserve the contents from deterioration during transportation; and casing head gasoline cars are insulated, so as to preserve a uniform temperature, and are fitted with special dome-head arrangements and safety appliances. A tank car for transportation of asphalt and other heavy oils requires heater coils, in order to liquefy the contents for unloading. Some tank cars are constructed with compartments, so that two or more grades of oil may be transported at a time. Special loading and unloading facilities are necessary for oil shipments. It is necessary to force some oils out of the cars by steam pressure, others by the use of pumps, and from still others the liquid flows out by gravity. * * *

"It is more economical and more efficient for the refiner to furnish a tank car, either owning it or leasing it from some concern, than for the railroad company to own it. A refiner, producing two kinds of oil, gasoline and residuum, requires two kinds of cars. Another refiner, producing all grades of oil, from the lighter oils down to coke, will require several kinds of cars. The cost of cleaning a car which has been used for fuel oil, in order to make it fit for handling gasoline, is very great. These and other reasons, which are given in detail and might be here repeated, if necessary, have led to the system of private ownership of tank cars throughout the country generally. * * *

"The refiner of oil or the meat packer could no more do business on an economical and efficient basis without his private cars than he could without

his modern equipped refining or packing plant. The private car part of the business has grown with the rest. Doubtless in the beginning demands were made by these shippers that carriers should supply tank and meat cars; but it was quickly demonstrated that business could not be done in the most effective manner, were carriers to own or control cars of that kind. As a rule carriers have never furnished these cars, and it has come to be mutually understood that they should not do so. The oil refiner and meat packer demand an adequate supply of cars at all times. It is conceded by shippers that neither an adequate supply nor its efficient distribution can be afforded by carriers. The requirement has been that there shall be the most efficient use of tank and refrigerator cars, which has been one of the results of private ownership. While this has undoubtedly been of benefit to carriers, it has been of incalculable benefit to shippers as well."

It is also disclosed by the report of the Interstate Commission in that case that very few railroads in the United States furnish tank cars for the use of shippers (see, also, United States v. Penn. R. R. Co., 242 U. S. 208–231, 37 Sup. Ct. 95, 61 L. Ed. 251), and that railroad tariffs usually provide that the carriers assume no obligation to furnish tank cars. There is an economic waste in the use of tank cars, because such cars usually are returned empty from the places where their contents are discharged to the points of origin of shipment, and they are not adapted for general use. Under the rules of interchange of cars, a railway company may have a large supply of such cars, and yet have none of them immediately available on its own lines. To meet this difficulty a number in excess of the demands of shippers on its own lines must be provided. We think the rule is a reasonable one, that if the shipper wishes to compel the carrier to accept his goods he must properly prepare and pack his product to suit the cars that the carrier assumes to supply, and which are ordinarily furnished by carriers for such products, and that it is not the usual practice of railway companies to furnish tank cars for shippers. Questions of the proper rates to be given to shippers of liquids, or of discrimination between shippers who furnish their own tank cars and shippers of similar articles in barrels or otherwise, are not involved here.

[5] There is another reason why the railway company was not bound to furnish for the use of the refining company the cars in question. The railway company had published a tariff which announced its readiness to transport oil in tank cars, but this tariff did not purport to furnish the cars for this purpose. It had not held itself out as ready to furnish tank cars for shippers. The five cars in controversy had been leased by it for its own use in operating its railway, and had been but temporarily furnished for the use of the refining company until it should again have need for them. When the prolonged drought endangered its water supply, it was the right of the railway company to withdraw the cars from the use of the refining company, in order to supply its engines and roundhouses with water. The railway company owed a duty to the public to keep its trains in operation, and this duty was superior to the demand of the refining company for these tank cars, in addition to those it owned and operated. L. & N. R. Co. v. Queen City Coal Co., 99 Ky. 217, 35 S. W. 626; Harp v. Choctaw, O. & G. R. Co., supra.

The order of the District Court will be reversed and set aside, with directions to dissolve the restraining order and to deny the application for temporary injunction.