## LUCKING v. DETROIT & C. NAVIGATION CO.

(District Court, E. D. Michigan, S. D. May 20, 1921.)

No. 392.

1. **Courts ⬅289—Suit held within jurisdiction of federal court as involving federal question.**

A bill against a steamship company, alleging that it has for many years during each navigation season on the Great Lakes, through arrangements with connecting railroad carriers, established through routes and rates for the transportation of passengers and property in interstate commerce, partly by water and partly by rail, that it threatens, without lawful reason, to discontinue operation of its vessels in violation of the provisions of Interstate Commerce Act Feb. 4, 1887, as amended, and

praying an injunction restraining such discontinuance, *held* to state a cause of action arising under a law of the United States, within the jurisdiction of a federal court, regardless of the citizenship of the parties.

2. Shipping ⊜⎓13—Common carrier by water not bound to continue operation over certain route.

A common carrier by water, having no public franchise and enjoying no special public rights or privileges, which has established regular routes for the transportation of passengers and property in interstate and intrastate commerce, is not bound by the common law to continue to operate its vessels over any such route, if it finds it desirable to discontinue and abandon the same.

3. Shipping ⊜⎓13—Interstate Commerce Act does not prevent discontinuance of service by water carrier.

The provision of Interstate Commerce Act Feb. 4, 1887, § 1 (4), as amended by Act Feb. 28, 1920, requiring carriers subject to the act to provide and furnish transportation on reasonable request therefor, merely requires common carriers, when actually engaged in the transportation of passengers and property, to receive and carry such passengers and property as may be offered to them without discrimination, and does not prohibit a carrier by water from discontinuing its service, especially in view of the specific provision of subdivision 18 of that section that "no carrier by railroad subject to this act shall abandon all or any portion of a line of railroad, or the operation thereof," without permission of the Interstate Commerce Commission.

In Equity. Suit by William Lucking against the Detroit & Cleveland Navigation Company. On motion to dismiss bill. Motion granted.

William Lucking, of Detroit, Mich., in pro. per.

Angell, Turner & Dyer, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This cause is before the court on motion to dismiss the bill of complaint. The material allegations of such bill are as follows:

That plaintiff is a citizen and resident of the city of Detroit, Mich., which is situated in this district; that the defendant is a Michigan corporation, having its principal office and place of business in said city, and that it was incorporated for the purpose of engaging in the business of maritime commerce; that said defendant is now, and has been for the last 20 years and more, during the navigation season, which includes the months of May, June, July, August, and September, a common carrier for hire, and engaged in interstate and intrastate transportation of passengers and property on Lake Huron and Lake Erie and connecting waters; that in such capacity defendant has each season carried many passengers and much freight over well-known and defined routes, such as between Detroit, Mich., and Buffalo, N. Y., between Detroit and Cleveland, Ohio, and between Toledo, Ohio, and Detroit, Mich., and thence through Lake Huron to and from various cities and ports in Michigan, on said Lake Huron, including Port Huron, Harbor Beach, Oscoda, St. Ignace, and other places; that defendant will continue its interstate business, in its capacity as a common carrier for hire, during the navigation season

⊜⎓For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of 1921 and thereafter; that defendant owns and operates in its said
business several large steamers; that in the conduct of such business
defendant has, by arrangement with other common carriers by railroad,
been engaged in the continuous transportation of passengers and
freight, partly by railroad and partly by water, from various ports on
the routes reached by defendant's steamers to and from various points
on the railroads of said other carriers, in both interstate and intrastate
commerce, by means of joint tariff rates and arrangements duly entered
into in accordance with law, and that defendant will continue so to do
through the navigation season of the year 1921 and afterwards, and will
derive a fair and reasonable return therefrom; that it has been the
custom of defendant for several years past to file with the interstate
Commerce Commission, just before the opening and just after the
close of its navigation season, supplements to its tariffs announcing
the establishment and the suspension, respectively, of said joint tariffs
with said other railroad carriers; that one of the most popular and
largely traveled routes on the Great Lakes for years has been that of
the defendant from Cleveland and Toledo, Ohio, to and from Detroit
and the cities and ports on Lake Huron already referred to; that in
the conduct of its said business as a common carrier for hire said
defendant has made large profits on its capital investment therein,
and in so doing has availed itself of many valuable and costly river and
harbor improvements maintained by the United States as an aid to
navigation along said water routes; that for several years contin-
uously defendant has operated certain of its steamers over its route,
familiarly known as the "Detroit and Mackinac Route," between To-
ledo, Ohio, and Detroit, Mich., and thence northerly to and from said
points on Lake Huron, and that many of the communities on said
Lake Huron depend largely on the service rendered by said steamers
during the navigation season of each year, and transport therein large
quantities of freight and great numbers of passengers to and from
points in Ohio and New York, and to and from cities and destinations
on the lines of said common carriers by railroad in said continuous
carriage; that such freight is transported by defendant regularly from
year to year, during the navigation season, in said steamers, which
have maintained a regular service of four trips per week in each di-
rection on said Detroit and Mackinac route, including four departures
from said points on Lake Huron for Detroit and Toledo and way
ports on said route, and four departures from Detroit and Toledo for
said way ports on Lake Huron; that plaintiff in the past has, and in
the future intends to, become a passenger on said steamers of de-
fendant over said route, and has shipped property, including house-
hold furniture and supplies for his summer residence, on said steam-
ers, and desires to continue to do so during the navigation season of
the year 1921 and thereafter; that plaintiff has been informed and
believes that, because of an alleged dissatisfaction on the part of de-
fendant with one of the navigation laws of the United States, com-
monly referred to as the "Seamen's Act" (Act March 4, 1915, c. 153,
38 Stat. 1164), defendant has threatened, and intends, to discontinue
and abandon the operation of its said steamers over said Detroit and

Mackinac route; that it is necessary, before the opening of the navigation season, for the defendant to overhaul and repair said steamers in preparation for operation during the coming season, but that defendant, following its expressed intention to abandon said route, will not prepare said steamers for their usual and customary transportation service; that it is the duty of defendant, both at common law and under the federal statutes, including the Interstate Commerce Act, to provide and furnish such transportation during 1921 and thereafter, over said route, as has been its usual custom in the past; that plaintiff has heretofore filed a petition, similar to its present bill, with the Interstate Commerce Commission, but that said Commission has ruled that it has no jurisdiction in the premises; and that this bill is filed also on behalf of all other persons and corporations who may desire to intervene herein.

The specific relief prayed includes an order requiring defendant to furnish proper and suitable transportation for passengers and property during its navigation season of 1921 and thereafter over said Detroit and Mackinac route according to its past custom, an injunction restraining the defendant from discontinuing such transportation over said route, and a mandatory injunction requiring the defendant to prepare its said steamers for service on said route during the ensuing season of navigation in accordance with its past custom.

The defendant has filed a motion to dismiss the bill of complaint, alleging that it appears from said bill (1) that this court is without jurisdiction in the premises; and (2) that the plaintiff is not entitled to the relief prayed. These two objections will be considered in the order named; the allegations of fact contained in the bill being, of course, accepted as true for the purposes of the motion to dismiss.

[1] 1. Has this court jurisdiction to entertain the bill and to grant any of the relief prayed? Diversity of citizenship is not involved, and the necessary jurisdiction must depend upon the presence of a federal question. Is this, then, a case arising under the Constitution or laws of the United States? As already noted, one of the contentions of the plaintiff is that the proposed discontinuance by the defendant of the operation of its steamers over the route referred to would be a violation of the Interstate Commerce Act, certain provisions of which, claimed by plaintiff to be applicable, are quoted in its bill.

It is, of course, well settled that, if the result of a suit depends upon the construction and effect of a federal statute, such a suit arises under the laws of the United States, within the meaning of the constitutional provision conferring jurisdiction upon the federal courts in such cases. Louisville & Nashville R. R. Co. v. Rice, 247 U. S. 201, 38 Sup. Ct. 429, 62 L. Ed. 1071. It is equally well settled that, where the plaintiff in a case plants a claim for relief upon a federal law, and such claim is apparently made in good faith, is based upon real and substantial grounds, and is not so unreasonable and wholly destitute of merit as to be merely frivolous and colorable, such a case presents a federal question within the general jurisdiction of the federal court, irrespective of the presence or absence of diversity of

citizenship. Boston Store v. American Graphophone Co., 246 U. S. 8, 38 Sup. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447.

Plaintiff invokes the Interstate Commerce Act as a basis for its claim to relief. The first subdivision of the first section of said Interstate Commerce Act (the Act of February 4, 1887, chapter 104, 24 Stats. at Large, 379, as amended) provides that the provisions of such act shall apply to common carriers engaged in "the transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment." The fourth subdivision of the same section provides that:

"It shall be the duty of every common carrier subject to this act engaged in the transportation of passengers or property to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates, fares, and charges applicable thereto, and to provide reasonable facilities for operating through routes and to make reasonable rules and regulations with respect to the operation of through routes, and providing for reasonable compensation to those entitled thereto."

Considering, then, these provisions of the statute in connection with the allegations in the bill of complaint to the effect that in the conduct of its business as a common carrier the defendant "has, by arrangement with other common carriers by railroad, been engaged in the continuous transportation of passengers and property, partly by railroad and partly by water, from various ports and points on the routes reached by defendant's steamers to and from various points on the railroads of said other carriers," and in view of the allegations in the bill as to the interstate character of the commerce carried by the defendant over its various routes, I cannot avoid the conclusion that plaintiff has stated a claim for relief based upon a federal law, and that such claim is not so unsubstantial and unreasonable as to be frivolous and merely colorable. The bill raises, in my opinion, a real and substantial federal question, which it is the duty of this court to consider and decide. It follows that the objection based upon the supposed lack of jurisdiction of the court to entertain this suit must be overruled.

[2] 2. Coming, then, to consider the merits of the case, as shown by the bill, the question presented is whether a common carrier by water, after establishing several regular routes for the transportation of passengers and freight by vessel, in both interstate and intrastate commerce, is under any legal obligation to continue to operate its vessels in such transportation over all of such routes, in the absence of a franchise or other arrangement with the state imposing upon it such an obligation.

Plaintiff contends that the duty to continue such operation is created both by the Interstate Commerce Act and also by the common law. If such duty does arise from either of the sources mentioned, plaintiff is entitled to the relief prayed in this court, since the federal jurisdiction, having been invoked upon real and substantial grounds of federal law, extends to the determination of all questions involved in the case, whether resting upon federal or state law, and irrespective

of the disposition made of the federal question involved. Greene v. Louisville & Interurban Railroad Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

As the federal statute thus invoked must be construed in the light of the circumstances existing and known to Congress at the time of its enactment, including the state of the common law then in force, it will be more convenient to first consider the extent of the duty of a common carrier, with reference to the subject under consideration, at the common law. It is elementary that it is the duty of a common carrier, even in the absence of any statute to that effect, as incidental to the occupation in which it is engaged, to receive and carry freight and passengers, upon reasonable request therefor, without discriminations and on reasonable rates and charges. Winona & St. Peter Railroad Co. v. Blake, 94 U. S. 180, 24 L. Ed. 99; Louisville & Nashville Railroad Co. v. F. W. Cook Brewing Co., 223 U. S. 70, 32 Sup. Ct. 189, 56 L. Ed. 355; Chicago, Rock Island & Pacific Railway Co. v. Lawton Refining Co., 253 Fed. 705, 165 C. C. A. 299; 10 Corpus Juris, 65. No authority, however, has been called to my attention, and I have discovered none, to the effect that a common carrier, such as the defendant here, not enjoying any public franchises or exercising any public powers or privileges, is bound, after commencing to operate vessels over a certain route, to continue such operation, if it finds it desirable to discontinue and abandon the same.

It is true that common carriers, like railroad companies, which enjoy peculiar rights and powers at the hands of the state, are not permitted to discontinue at will the rendition of the transportation services for the performance of which they have been endowed with such special privileges and powers. A railroad company is clothed by the state with special rights, franchises, and privileges, including certain attributes of sovereignty itself, as, for example, the power of eminent domain. Enjoying, therefore, as it does, these special and public powers, such railroad company is subject to correspondingly special and public duties, among which is the obligation, arising by operation of law from the acceptance of its rights and franchises, and continuing during its enjoyment thereof, to continue to operate as a common carrier over the lines and routes established by it for that purpose; such obligation arising out of, and depending upon, the unusual and peculiar rights and privileges so exercised by it. Missouri Pacific Railway Co. v. Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472; Chesapeake & Ohio Railway Co. v. Public Service Commission, 242 U. S. 603, 37 Sup. Ct. 234, 61 L. Ed. 520; 4 Ruling Case Law, 672; 22 Ruling Case Law, 750.

The reasons, however, which underlie and prompt the imposition of this duty upon common carrier railroad companies, do not apply to common carriers such as the defendant. The latter holds no public franchise and enjoys no rights or privileges other than are held by any private individual desiring to engage in the business of transporting freight and passengers by water. It cannot exercise the power of eminent domain. It has no private right of way or special facilities for acquiring means of access by its vessels to docks or wharves,

but must use the open sea as its highway, and depend, for the proper maintenance of its vessels and equipment, upon such arrangements as it may be able to make by private contract, like any other private citizen. In the eyes of the law it occupies no different position than that of a common carrier operating taxicabs or other vehicles upon land, and it is under no greater obligation than is the common carrier last mentioned, so far as the continued operation of its lines is concerned. It has never been supposed, and could not seriously be contended, that every person who engages in the business of transportation as a common carrier is obliged to continue in such business indefinitely, and may be restrained by injunction from abandoning such of its routes as it may wish to discontinue.

The mere fact, then, that the defendant is a common carrier, does not subject it to the duty to continue the operation of its vessels over any or all of its routes of transportation. As, therefore, it does not appear that the defendant is a public or quasi public corporation, or exercises any powers or rights from which flow the duty in question, I am unable to find in the common law any basis or warrant for the coercive order sought, and I am clearly of the opinion that, in the absence of some statutory provision applicable, the plaintiff is not entitled to the relief prayed.

[3] Is there, then, any statutory provision which prevents the defendant from exercising the right, which it otherwise has, to withdraw from the business in which it has been engaged, to the extent which it deems necessary or desirable? Plaintiff invokes the fourth subdivision of the first section of the Interstate Commerce Act, hereinbefore quoted, to the effect that:

"It shall be the duty of every common carrier subject to this act, engaged in the transportation of passengers or property, to provide and furnish such transportation upon reasonable request therefor."

This language is merely declaratory of the common-law rule governing the duty of common carriers. 10 Corpus Juris, 66. It is to be observed that the provision in question applies to common carriers subject to the act "engaged in the transportation" of passengers or property, and the obligation referred to is the duty "to provide and furnish such transportation upon reasonable request therefor." It is clear that the meaning and effect of this language is that a common carrier, subject to the act, which is actually engaged in transporting passengers or freight must receive and carry such passengers or freight as may be offered to it, without discrimination, and in the performance of the duty under which it rests so long as it holds itself out as a carrier of such passengers or freight, to provide the necessary facilities and equipment for "such transportation," provided that "reasonable request" is made therefor.

There is nothing in this or any other section of the statute which prevents a common carrier, such as the defendant, from disengaging itself from the transportation of passengers or freight between particular points, or which makes it the duty of such a carrier to furnish such transportation if it is not actually "engaged in" the business of

furnishing any transportation between such points. If in the present case the grievance of the plaintiff were that the defendant, while engaged in transporting passengers and freight over its so-called Detroit and Mackinac route, refused or failed to furnish adequate facilities or equipment for such transportation, the claim of plaintiff for proper relief from such a situation, on the ground that the defendant was violating a duty created or expressed in the language just quoted, would not be without force. The situation, however, actually presented, is quite different. To the extent that defendant discontinues the furnishing of any transportation over one of its routes, to that extent it ceases to be engaged as a common carrier in transportation, or subject to the obligation referred to in this portion of the statute. Considering the right which a carrier such as defendant has at common law to abandon entirely one or more routes for the operation of its vessels, an intention on the part of Congress to take away such right, and impose on such a carrier the duty resting upon a carrier by railroads in this respect, cannot be deduced from language which falls so far short of expressing such an intention as does the provision now under consideration. It would have been easy to have expressed such a purpose, and it must be assumed that if Congress had intended to create such an obligation, in derogation of the common-law rule applicable, it would have done so in appropriate terms.

The conclusion, moreover, that it was not intended by the Interstate Commerce Act to impose upon such a carrier the obligation mentioned, is strengthened and confirmed by the provision in the eighteenth subdivision of section 1 of the act to the effect that:

"No carrier by railroad subject to this act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment."

In this part of the statute, Congress has legislated upon the subject of the abandonment of existing lines of transportation, and in so doing it has expressly imposed the limitations created, not upon "every common carrier subject to this act," as in other sections and clauses of the statute, but only upon a "carrier by railroad subject to this act." "Expressio unius exclusio alterius." The express imposition of this obligation upon common carriers by railroad evidences, in my opinion, an intention to exclude from the burden thereof every other common carrier. But, however this may be, I am unable to discover in any of the comprehensvie terms of the statute invoked any language indicating a purpose to subject a carrier such as the defendant to the duty which plaintiff seeks to have this court enforce. Nor do I know of any statutory provision creating such an application, or any decision applying or announcing such a rule; none of the cases cited by plaintiff involving a proposed discontinuance or abandonment of a route of transportation by such a carrier. For the reasons stated, it results that the motion to dismiss the bill must be granted, and an order will be entered accordingly.