JAMES v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1922.)

No. 5930.

1. Carriers ⚖=>30—Exception to tariff classificaton held not to abrogate provision that carrier was not obliged to furnish special poultry cars.

A. note in the printed tariff and classification filed by a railroad company, stating that it was not obligated to furnish special poultry cars, and requiring shippers to pay the rental for such cars, which the company did not own, *held* not abrogated by a circular containing exceptions to the "classification" which did not contain the note, but provided a different classification and a lower rate for live poultry in carload lots.

2. Carriers ⚖=>32(2)—Cannot waive provisions of filed and published tariffs.

A carrier is without power to waive a provision of its filed and published tariff respecting the instrumentalities and facilities which it would furnish to shippers.

3. Carriers ⚖=>40—Railroad company held under no duty to furnish special poultry cars to shipper.

A carrier *held* under no duty to furnish to a shipper special poultry cars, which it did not own, and when it denied its obligation to furnish such cars in its filed and published tariffs.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by Emmett E. James against James C. Davis, Director General of Railroads and Agent. Judgment for defendant, and plaintiff brings error. Affirmed.

The parties will be designated as they were in the trial court. The plaintiff commenced this action in a state court of Nebraska against the railroad company and Walker D. Hines, Director General of Railroads and Agent, to recover damages alleged to have been sustained by the plaintiff on account of the failure of defendant to furnish cars for the transportation of live poultry in interstate commerce. The case was removed to the United States District Court for the District of Nebraska and dismissed as to the railroad company. Subsequently James C. Davis, Director General of Railroads and Agent, was substituted for the defendant, Walker D. Hines. The trial of the action resulted in a directed verdict for the defendant, and this ruling is assigned as error. The facts as they appeared at the trial were substantially as follows:

The plaintiff is a dealer in live poultry with his principal place of business at Falls City, Richardson county, Neb., buying said poultry at various places in Nebraska and Kansas and shipping the same to the principal plant at Falls City, and from there in carload lots to New York and other Eastern markets. For this purpose, special cars are required. The defendant does not own any of these special cars. They are provided by the Live Poultry Transit Company. The shipper pays the rental charge as specified in the tariff. In the months of September and October, 1919, plaintiff required for the shipping of live poultry then on hand to the principal plant in Falls City, and also that which had been purchased from customers and was then in transit to Falls City, a large number of special cars. Between September 8th and 13th plaintiff gave orders to and made requisitions on the agents, servants, and officers of the defendant for nine cars to be used in shipping live poultry from the plant in Falls City, such cars to be furnished one each on September 15th, 17th, 19th, 22d, 24th, 26th, and October 1st and 3d, which orders and requisitions were duly received and acknowledged by the officers of the defendant and were given and received at such times that in the usual course of business, they might and could have been filled, and such cars could have been at the poultry house of the plaintiff at Falls City on the days for which they

were ordered. Defendant neglected and failed to furnish the cars and plaintiff claims that he suffered damages by reason thereof in the sum of $7,100.35. The defendant's predecessor in office, more than 30 days prior to the dates heretofore mentioned, when the special cars were to be delivered to plaintiff, adopted rates, rules, and regulations governing the transportation of live poultry in carload lots and incorporated the same into printed tariffs and classifications, and filed the same with the Interstate Commerce Commission at Washington, and posted and published the same as required by law. On the dates above referred to said tariffs and classifications were in full force and effect, and provided in respect to the transportation of live poultry in carload lots that the same would be transported by the defendant at rates specified in said tariffs. The transportation of live poultry from Falls City is governed by the provisions of the Western Classification and exceptions thereto which provide as follows:

"Defendant's Exhibit 2.

"Item.                                                                L. C. L.    C. L.

"9. Poultry or Pigeons Live.
    "See notes:
"In coops or crates, L. C. L...............................................D 1
"In coops or crates or in poultry cars, straight or mixed C. L., min. wt.
    18,000 lbs., subject to rule 6–B.......................................    2
    "Note 1. Carload shipments must be accompanied by caretakers. Rules governing the transportation of caretakers will be found in carriers' tariffs.
    "Note 2. Feed and water may be loaded in the same car, but no weight allowance shall be made therefor.
    "Note 3. Ratings provided do not obligate the carriers to furnish special poultry cars, and do not include the rental charge for special poultry cars; the rental charge for such cars will be found in carriers' tariffs.
    "Note 4. Shipments will not be received for transportation when consigned 'To Order' or 'Notify.'"

"Plaintiff's Exhibit 2.

"Circular 17.

"Exceptions to Classifications—Continued.

| "Rule No. | Articles. | Rating. |
|---|---|---|

"Poultry (Live), Carloads.
    "Poultry (Alive), C. L., in poultry cars or in stock cars (see note), actual weight, subject to minimum weight of 20,000 lbs.
1580
    "Note. Live poultry may be shipped in stock cars, when in coops of sufficient strength to be safely tiered, and when securely braced to prevent shifting in the car, the loading to be so arranged as to permit feeding and watering in transit. When so tendered rates and minimum weights applicable on live poultry in poultry cars, will apply.
    Third

    Class

    Rates

    "Feed and water furnished by and at the expense of the shipper or owner, necessary to properly care for the live poultry while in transit, will be transported in the car containing the live poultry without charge. If more feed is furnished than is required for the journey, and surplus is removed from the car at destination by the owner, consignee or agent thereof, such surplus will be charged for at the less than carload rate properly applicable thereto from point of origin to destination.
    "Shipments of live poultry, carloads, consigned 'To Order' will not be accepted.
    "Will not apply on Nebraska intrastate traffic except as provided in rule No. 110. See rule 1590."

In order that the ruling of the trial court may be understood, it is necessary to say that, following a suggestion on the part of the court, the evidence as to the tariffs and classifications and the exceptions thereto was first introduced.

When this evidence had been introduced, counsel for the plaintiff, by permission of the court, filed an amended reply to the answer of the defendant, paragraph 2 of which alleged as follows:

"2. And for a further reply in this behalf the plaintiff alleges the fact to be that at all times mentioned in the plaintiff's petition and for a long time before the dates therein mentioned and at all times since the said defendant held itself out to the shipping public as ready, willing, and able to furnish special cars for the shipping of live poultry in carload lots; that between the 14th day of September and the 4th day of October, 1919, the defendant furnished to the plaintiff six of such special poultry cars as alleged in the petition herein, and during the time mentioned in plaintiff's petition the defendant furnished to other shippers at Lincoln, Table Rock, Fairbury, and Fremont, Nebraska, St. Joseph and Kansas City, Missouri, as also to shippers at other points not known to the plaintiff, special poultry cars for the shipping of live poultry in carload lots, thereby waiving any supposed rights which they may have had under the terms of the rules and regulations governing the shipment of live poultry in carload lots as adopted and filed with the Interstate Commerce Commission as mentioned in the answer of the defendant. And the plaintiff further alleges the fact to be that at no time did the defendant give to the plaintiff, as a reason for not furnishing special poultry cars, that it elected not to do so by virtue of such alleged regulation, but, on the contrary, repeatedly promised the plaintiff to furnish such special cars; that by virtue and in pursuance of such representations made by the defendant of its ability, readiness, and willingness to furnish such special cars the plaintiff made requisitions and orders on the defendant for such special cars as alleged in plaintiff's petition, which said orders and requisitions were accepted by the defendant, who then and there promised and agreed to and with the plaintiff to furnish such special cars; that relying on such promises so made by the defendant the plaintiff continued to purchase live poultry, until by reason of the defendant's failure and neglect to furnish such cars he was obliged to cease buying poultry as alleged in his petition. And the plaintiff alleges that by reason of the acts, promises, and agreements of the defendant as above set forth the defendant is now estopped from relying on such alleged and regulation so filed with the Interstate Commerce Commission, and from denying its liability to furnish such special poultry cars to the plaintiff for the shipment of his poultry in carload lots."

After the amended reply was filed, counsel for the defendant moved that the jury be instructed to return a verdict in favor of the defendant on the pleadings and record as made, for the reason that the evidence and the admissions made in the pleadings precluded the plaintiff from maintaining the cause of action stated in the petition. This motion as heretofore stated was granted.

F. A. Hebenstreit, of Omaha, Neb., and F. N. Prout, of Falls City, Neb., for plaintiff in error.

J. W. Weingarten, of Omaha, Neb. (Kenneth F. Burgess, of Chicago, Ill., of counsel, and Byron Clark and Jesse L. Root, both of Omaha, Neb., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge (after stating the facts as above). [1] The question arising upon the record is as follows: Was note 3 in the Western Classification of live poultry filed with the Interstate Commerce Commission, Defendant's Exhibit 2, in full force and effect during the time mentioned in the petition of the plaintiff, and, if so, did it justify the defendant in its refusal to furnish the plaintiff special cars for the transportation of live poultry. The uncontradicted evidence

showed that the plaintiff always shipped his live poultry under the third-class rate, minimum weight 20,000 pounds, as provided in Plaintiff's Exhibit 2. In view of this fact, he claims that said exhibit controlled the classification and rate of shipment, and, as there was no such language in said exhibit as is found in note 3 of Defendant's Exhibit 2, there was no declaration by the defendant on file in connection with the classification and rates provided in Plaintiff's Exhibit 2, to the effect that the ratings provided did not obligate the defendant to furnish special poultry cars, and therefore, as the defendant held himself out as a carrier of live poultry in poultry cars, he was bound to furnish such cars to the plaintiff when requested to do so. It appears from the record that Circular No. 17, in which Plaintiff's Exhibit 2 is found, provided on the title page thereof as follows:

"Rules, regulations and exceptions shown herein will take precedence over the classification governing tariffs made subject hereto. (See rule 20.)"

Rule 20 of the Western Freight Tariff Bureau found in Circular 17 reads as follows:

"The term Western Classification. * * * Where Western Classification or Current Western Classification is referred to herein, the same is intended to refer to Western Classification No. 55 (R. C. Fyfe's I. C. C. No. 13, F. S. C. Mo. No. 4), supplements thereto and reissues thereof."

This Western Classification No. 55 is a classification containing Defendant's Exhibit 2. It is therefore claimed that note 3 was superseded by Circular No. 17. We do not think that it necessarily follows that all of Defendant's Exhibit 2 was superseded. The language taken from the title page of Circular No. 17, issued by the Western Freight Tariff Bureau, refers to rules, regulations, and exceptions that will take precedence over the "classification" governing tariffs subject thereto. The ratings provided in Western Classification No. 55 are for—

"Poultry or pigeons, live." "In coops or crates L. C. L. D. 1 (meaning double first-class rate)." "In coops or crates or in poultry cars, straight or mixed car load min. W. T. 18,000 lbs., subject to rule 6–B 2 (meaning second-class rate)."

Plaintiff's Exhibit 2, being rule No. 1580 of Western Freight Tariff Bureau Circular No. 17, contains the following classification:

"Poultry, Live, Carloads. Poultry (alive), C. L., in poultry cars or in stock cars (see note), actual weight, subject to minimum weight of 20,000 lbs."

This classification carried a third-class rate, which was a cheaper rate than those provided for in Defendant's Exhibit 2 taken from Western Classification No. 55. The rate was not only cheaper but the minimum weight was larger. The defendant had said in its Exhibit 2 with a double first-class and a second-class rate and a less minimum weight, that it was not obligated to furnish special poultry cars, that the ratings did not include the rental charge for special poultry cars and that the rental charge for such cars would be found in carriers' tariffs. It is now insisted that, because note 3 does not appear in Plaintiff's Exhibit 2 that the defendant is obligated to pay the rental stated in the live poultry tariffs to the Live Poultry Transit Company, the owner

of the cars, for that is what plaintiff's contention amounts to, although it is carrying the poultry at a less rate than it did when it said that it would not furnish special poultry cars. As there is no express repeal of note 3 the express repeal, if it may be so called, being limited to "classification," we think whether note 3 has been superseded is a question of intention to be decided on all the evidence. It appears from the record that Western Classification No. 55 is the principal document filed by the defendant showing the classification and rates for live poultry. Circular No. 17 of the Western Freight Tariff Bureau is, as its name denotes, an exception to the regular classification. It does not seem reasonable to us that the defendant would intentionally abrogate note 3, and carry live poultry at a cheaper rate, while the cars still belonged to the Live Poultry Transit Company, and the rental charge for their use still was a part of defendant's tariff. The evidence shows that in all cases this rental charge was charged in the expense bill against the shipper, or billed as an advance payment and paid by the consignee. Our conclusion therefore is, upon the whole matter, that note 3 was in force during the time mentioned in plaintiff's petition when cars were requested. We think our conclusion is sustained by the following cases which relate to the construction of tariffs: Chicago Portland Cement Co. v. I. C. R. Co. et al., 45 Interst. Com. Com'n R. 477; Merrell-Soule Co. v. B. & O. R. Co., 49 Interst. Com. Com'n R. 733; Ludowici-Celadon Co. v. E. J. & E. Ry. Co. et al., 39 Interst. Com. Com'n R. 407; Newman Lumber Co. v. M. C. R. R. Co., 26 Interst. Com. Com'n R. 97; Marx et al. v. I. C. R. Co., 36 Interst. Com. Com'n R. 519.

[2] It remains to consider what effect note 3 had upon the duty of the defendant to furnish cars for the shipment of live poultry. So far as the allegations of plaintiff's complaint and reply touching the question of waiver of note 3 by the defendant's acts and declarations are concerned, the question is not argued in the brief of counsel for plaintiff. The decisions of the court are such that the omission is well justified. Plaintiff could not waive the declaration contained in note 3, as it referred to the instrumentalities and facilities for carriage that would be furnished by the defendant. These under the law it was necessary to mention in the tariffs, and each shipper was bound to take notice of the same, and each shipper was entitled to the same treatment as all other shippers by the defendant. The allegations in plaintiff's amended reply that the defendant furnished these special poultry cars to other shippers at Lincoln, Table Rock, Fairbury, and Fremont, Neb., and at St. Joseph and Kansas City, Mo., if true, simply show that the defendant was guilty of discrimination, if the circumstances and conditions were the same. The following authorities are decisive of the question as to whether the defendant could disregard note 3 as filed as a part of its tariff for the carriage of live poultry: Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Davis v. Southern Pac. Co. (D. C.) 235 Fed. 731; Hamlen & Sons Co. v. Illinois Cent. R. Co. (D. C.) 212 Fed. 324; Zoller Hop. Co. v. Southern Pac. Co., 72 Or. 262, 143 Pac. 931.

[3] The only remaining question is as to the duty of the defendant

to furnish special poultry cars to the plaintiff with note 3 on file with the Interstate Commerce Commission and published in its tariffs for the carriage of live poultry.    An examination of the Interstate Commerce Law and the several amendments thereof satisfies us that the law at the time the plaintiff's alleged cause of action arose did not declare that it was the duty of the carrier to furnish or provide special types of equipment and that the law as announced in U. S. v. Pennsylvania Ry. Co., 242 U. S. 208, 37 Sup. Ct. 95, 61 L. Ed. 251, rules this case.    The following paragraphs from the syllabus in that case fairly state what the court decided:

"The powers conferred on the Interstate Commerce Commission by the Act to Regulate Commerce, as amended (Act Feb. 4, 1887, 24 Stat. 379; Act March 2, 1889, 25 Stat. 855; Act June 29, 1906, 34 Stat. 584; and Act June 18, 1910, 36 Stat. 539), do not include the power to require carriers to provide and furnish oil tank cars—no question of discrimination being involved."

"When a carrier in its published tariffs denies any obligation to furnish tank cars, the fact that it publishes rates for commodities so carried may not be construed as an offer, constituting a duty, to furnish such cars; and a finding by the Commission to the contrary is reviewable as a conclusion of law."

See, also, Matter of Private Cars, 50 Interst. Com. Com'n R. 652; Chicago R. I. Ry. Co. v. Lawton Refining Co., 253 Fed. 705, 165 C. C. A. 299, Eighth Circuit.    We are of the opinion that the trial court did not err in directing a verdict for defendant.

Affirmed.